SMITH, SHERIFF *v.* GOGUEN

No. 72–1254. Argued November 12–13, 1973—
Decided March 25, 1974

Powell, J., delivered the opinion of the Court, in which Douglas, Brennan, Stewart, and Marshall, JJ., joined. White, J., filed an opinion concurring in the judgment, *post,* p. 583. Blackmun, J., *post,* p. 590, and Rehnquist, J., *post,* p. 591, filed dissenting opinions, in which Burger, C. J., joined.

*Charles E. Chase,* Assistant Attorney General of Massachusetts, argued the cause for appellant. With him on the briefs were *Robert H. Quinn,* Attorney General, *John J. Irwin, Jr.,* and *David A. Mills,* Assistant Attorneys General, and *William T. Buckley.*

*Evan T. Lawson* argued the cause for appellee. With him on the brief were *Matthew Feinberg* and *Burt Neuborne.*

Mr. Justice Powell delivered the opinion of the Court.

The sheriff of Worcester County, Massachusetts, appeals from a judgment of the United States Court of Appeals for the First Circuit holding the contempt provision of the Massachusetts flag-misuse statute unconstitutionally vague and overbroad. 471 F. 2d 88 (1972), aff'g 343 F. Supp. 161 (Mass). We noted probable jurisdiction. 412 U. S. 905 (1973). We affirm on the vague-

ness ground. We do not reach the correctness of the holding below on overbreadth or other First Amendment grounds.

## I

The slender record in this case reveals little more than that Goguen wore a small cloth version of the United States flag sewn to the seat of his trousers.[1] The flag was approximately four by six inches and was displayed at the left rear of Goguen's blue jeans. On January 30, 1970, two police officers in Leominster, Massachusetts, saw Goguen bedecked in that fashion. The first officer encountered Goguen standing and talking with a group of persons on a public street. The group apparently was not engaged in any demonstration or other protest associated with Goguen's apparel.[2] No disruption of traffic or breach of the peace occurred. When this officer approached Goguen to question him about the flag, the other persons present laughed. Some time later, the second officer observed Goguen in the same attire walking in the downtown business district of Leominster.

The following day the first officer swore out a complaint against Goguen under the contempt provision of the Massachusetts flag-misuse statute. The relevant part of the statute then read:

> "Whoever publicly mutilates, tramples upon, defaces or treats contemptuously the flag of the

---

[1] The record consists solely of the amended bill of exceptions Goguen filed in the Massachusetts Supreme Judicial Court, the opposing briefs before that court, the complaint under which Goguen was prosecuted, and Goguen's federal habeas corpus petition. App. 1–36, 42–43. We do not have a trial transcript, although Goguen's amended bill of exceptions briefly summarizes some of the testimony given by witnesses for the prosecution at his state trial. Goguen did not take the stand. Thus we do not have of record his account of what transpired at the time of his arrest or of his purpose in wearing a flag on the seat of his trousers.

[2] Tr. of Oral Arg. 5–6, 35–36.

United States . . . , whether such flag is public or private property . . . , shall be punished by a fine of not less than ten nor more than one hundred dollars or by imprisonment for not more than one year, or both. . . ."[3]

---

[3] Mass. Gen. Laws Ann., c. 264, § 5. Omitting several sentences protecting the ceremonial activities of certain veterans' groups, the statute read as follows at the time of Goguen's arrest and conviction:

"§ 5. Flag; penalty for misuse

"Whoever publicly mutilates, tramples upon, defaces or treats contemptuously the flag of the United States or of Massachusetts, whether such flag is public or private property, or whoever displays such flag or any representation thereof upon which are words, figures, advertisements or designs, or whoever causes or permits such flag to be used in a parade as a receptacle for depositing or collecting money or any other article or thing, or whoever exposes to public view, manufactures, sells, exposes for sale, gives away or has in possession for sale or to give away or for use for any purpose, any article or substance, being an article of merchandise or a receptacle of merchandise or articles upon which is attached, through a wrapping or otherwise, engraved or printed in any manner, a representation of the United States flag, or whoever uses any representation of the arms or the great seal of the commonwealth for any advertising or commercial purpose, shall be punished by a fine of not less than ten nor more than one hundred dollars or by imprisonment for not more than one year, or both. Words, figures, advertisements or designs attached to, or directly or indirectly connected with, such flag or any representation thereof in such manner that such flag or its representation is used to attract attention to or advertise such words, figures, advertisements or designs, shall for the purposes of this section be deemed to be upon such flag."

The statute is an amalgam of provisions dealing with flag desecration and contempt (the first 26 words) and with commercial misuse or other exploitation of flags of the State and National Governments. This case concerns only the "treats contemptuously" phrase of the statute, which has apparently been in the statute since its enactment in 1899. 471 F. 2d 88, 90 n. 2 (1972).

In 1971, subsequent to Goguen's prosecution, the desecration and contempt portion of the statute was amended twice. On March 8,

Despite the first six words of the statute, Goguen was not charged with any act of physical desecration.[4] As permitted by the disjunctive structure of the portion of the statute dealing with desecration and contempt, the officer charged specifically and only that Goguen "did publicly treat contemptuously the flag of the United States . . . ."[5]

After jury trial in the Worcester County Superior Court, Goguen was found guilty. The court imposed a sentence of six months in the Massachusetts House of Corrections. Goguen appealed to the Massachusetts Supreme Judicial Court, which affirmed. *Commonwealth* v. *Goguen,* —— Mass. ——, 279 N. E. 2d 666 (1972). That court rejected Goguen's vagueness argument with the comment that "[w]hatever the uncertainties in other circumstances, we see no vagueness in the statute as applied here." *Id.,* at ——, 279 N. E. 2d, at 667. The court cited no Massachusetts precedents

_____

1971, the legislature, per Stats. 1971, c. 74, modified the first sentence by inserting "burns or otherwise" between the terms "publicly" and "mutilates," and, in addition, by increasing the fine. Mass. Gen. Laws Ann., c. 264, § 5 (Supp. 1973). On August 12, 1971, per Stats. 1971, c. 655, the legislature appended a new sentence defining "the flag of the United States" phrase appearing in the first sentence: "For the purposes of this section the term 'flag of the United States' shall mean any flag which has been designated by Act or Resolution of the Congress of the United States as the national emblem, whether or not such designation is currently in force." *Ibid.* The 1971 amendments are relevant to this case only in the tangential sense that they indicate a recognition by the legislature of the need to tighten up this imprecise statute.

[4] Perhaps this was because of the difficulty of the question whether Goguen's conduct constituted physical desecration of the flag. Cf. 471 F. 2d, at 91 n. 4 ("[W]e are not so sure that sewing a flag to a background clearly affects 'physical integrity' ").

[5] App. 4.

interpreting the "treats contemptuously" phrase of the statute.[6]

After Goguen began serving his sentence, he was granted bail and then ordered released on a writ of habeas corpus by the United States District Court for the District of Massachusetts. 343 F. Supp. 161. The District Court found the flag-contempt portion of the Massachusetts statute impermissibly vague under the Due Process Clause of the Fourteenth Amendment as well as overbroad under the First Amendment. In upholding Goguen's void-for-vagueness contentions, the court concluded that the words "treats contemptuously" did not provide a "readily ascertainable standard of guilt." *Id.*, at 167. Especially in "these days when flags are commonly displayed on hats, garments and vehicles . . . ," the words under which Goguen was convicted "leave conjectural, in many instances, what conduct may subject the actor to criminal prosecution." *Ibid.* The court also found that the statutory language at issue "may be said to encourage arbitrary and erratic arrests and convictions." *Ibid.*

The Court of Appeals, with one judge concurring, affirmed the District Court on both First Amendment and vagueness grounds. 471 F. 2d 88. With regard to the latter ground, the Court of Appeals concluded that "resolution of [Goguen's void-for-vagueness] challenge to the statute as applied to him necessarily adjudicates the statute's facial constitutionality . . . ." *Id.*, at 94. Treat-

---

[6] Appellant correctly conceded at oral argument that Goguen's case is the first recorded Massachusetts court reading of this language. Tr. of Oral Arg. 17–18. Indeed, with the exception of one case at the turn of the century involving one of the statute's commercial-misuse provisions, *Commonwealth* v. *R. I. Sherman Mfg. Co.*, 189 Mass. 76, 75 N. E. 71 (1905), the entire statute has been essentially devoid of state court interpretation.

ing as-applied and on-the-face vagueness attacks as essentially indistinguishable in light of the imprecision of the statutory phrase at issue, *id.*, at 92, 94, the court found that the language failed to provide adequate warning to anyone, contained insufficient guidelines for law enforcement officials, and set juries and courts at large. *Id.*, at 94–96. Senior Circuit Judge Hamley, sitting by designation from the Ninth Circuit, concurred solely in the void-for-vagueness holding. *Id.*, at 105. Judge Hamley saw no need to reach the "far broader constitutional ground" of First Amendment overbreadth relied on by the majority, noting the "settled principle of appellate adjudication that constitutional questions are not to be dealt with unless this is necessary to dispose of the appeal." *Ibid.*

## II

We agree with the holdings of the District Court and the Court of Appeals on the due process doctrine of vagueness. The settled principles of that doctrine require no extensive restatement here.[7] The doctrine incorporates notions of fair notice or warning.[8] Moreover, it requires

---

[7] The elements of the void-for-vagueness doctrine have been developed in a large body of precedent from this Court. The cases are categorized in, *e. g., Grayned* v. *City of Rockford,* 408 U. S. 104, 108–109 (1972). See Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67 (1960).

[8] *E. g., Papachristou* v. *City of Jacksonville,* 405 U. S. 156, 162 (1972); *Lanzetta* v. *New Jersey,* 306 U. S. 451, 453 (1939) ("No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids") (citations omitted); *Connally* v. *General Construction Co.,* 269 U. S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law") (citations omitted).

legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent "arbitrary and discriminatory enforcement." [9]  Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts.[10]  The statutory language at issue here, "publicly . . . treats contemptuously the flag of the United States . . . ," has such scope, *e. g., Street* v. *New York,* 394 U. S. 576 (1969) (verbal flag contempt), and at the relevant time was without the benefit of judicial clarification.[11]

Flag contempt statutes have been characterized as void for lack of notice on the theory that "[w]hat is contemptuous to one man may be a work of art to another." [12]  Goguen's behavior can hardly be described as art.  Immaturity or "silly conduct" [13] probably comes closer to the mark.  But we see the force of the District Court's observation that the flag has become

---

[9] *E. g., Grayned, supra,* at 108; *United States* v. *Cohen Grocery Co.,* 255 U. S. 81, 89 (1921) ("[T]o attempt to enforce the section would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury"); *United States* v. *Reese,* 92 U. S. 214, 221 (1876) ("It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large").

[10] *E. g., Grayned, supra,* at 109; *Smith* v. *California,* 361 U. S. 147, 151 (1959).  Compare the less stringent requirements of the modern vagueness cases dealing with purely economic regulation.  *E. g., United States* v. *National Dairy Products Corp.,* 372 U. S. 29 (1963) (Robinson-Patman Act).

[11] See n. 6, *supra.*

[12] Note, 66 Mich. L. Rev. 1040, 1056 (1968).

[13] 343 F. Supp. 161, 166.

"an object of youth fashion and high camp . . . ." 343 F. Supp., at 164. As both courts below noted, casual treatment of the flag in many contexts has become a widespread contemporary phenomenon. *Id.*, at 164, 167; 471 F. 2d, at 96. Flag wearing in a day of relaxed clothing styles may be simply for adornment or a ploy to attract attention. It and many other current, careless uses of the flag nevertheless constitute unceremonial treatment that many people may view as contemptuous. Yet in a time of widely varying attitudes and tastes for displaying something as ubiquitous as the United States flag or representations of it, it could hardly be the purpose of the Massachusetts Legislature to make criminal every informal use of the flag. The statutory language under which Goguen was charged, however, fails to draw reasonably clear lines between the kinds of nonceremonial treatment that are criminal and those that are not. Due process requires that all "be informed as to what the State commands or forbids," *Lanzetta* v. *New Jersey,* 306 U. S. 451, 453 (1939), and that "men of common intelligence" not be forced to guess at the meaning of the criminal law. *Connally* v. *General Construction Co.,* 269 U. S. 385, 391 (1926). Given today's tendencies to treat the flag unceremoniously, those notice standards are not satisfied here.

We recognize that in a noncommercial context behavior as a general rule is not mapped out in advance on the basis of statutory language.[14] In such cases, perhaps the most meaningful aspect of the vagueness doctrine is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement. It is in this regard that the statutory language under scrutiny has its most notable deficiencies.

---

[14] Note, 109 U. Pa. L. Rev., *supra,* n. 7, at 82 n. 79.

In its terms, the language at issue is sufficiently unbounded to prohibit, as the District Court noted, "any public deviation from formal flag etiquette . . . ." 343 F. Supp., at 167. Unchanged throughout its 70-year history,[15] the "treats contemptuously" phrase was also devoid of a narrowing state court interpretation at the relevant time in this case.[16] We are without authority to cure that defect.[17] Statutory language of such a standardless sweep allows policemen, prosecutors, and juries to pursue their personal predilections. Legislatures may not so abdicate their responsibilities for setting the standards of the criminal law. *E. g., Papachristou* v. *City of Jacksonville,* 405 U. S. 156, 165–169 (1972). In *Gregory* v. *City of Chicago,* 394 U. S. 111, 120 (1969), Mr. Justice Black, in a concurring opinion, voiced a concern, which we share, against entrusting lawmaking "to the moment-to-moment judgment of the policeman on his beat." The aptness of his admonition is evident from appellant's candid concession during oral argument before the Court of Appeals regarding state enforcement standards for that portion of the statute under which Goguen was convicted:

"[A]s counsel [for appellant] admitted, a war pro-

---

[15] See n. 3, *supra.*

[16] See n. 6, *supra.* The contempt portion of the Massachusetts statute seems to have lain fallow for almost its entire history. Apparently there have been about a half dozen arrests under this part of the statute in recent years, but none has produced a reported decision. Tr. of Oral Arg. 28–29. In 1968, a teenager in Lynn, Massachusetts, was charged, apparently under the present statute, with desecrating the United States flag by sewing pieces of it into his trousers. New York Times, Sept. 1, 1968, p. 31, col. 1. The teenager was ordered by a state district court to prepare and deliver an essay on the flag. The court continued the case without a finding, depriving it of any precedential value.

[17] *E. g., United States* v. *Thirty-seven Photographs,* 402 U. S. 363, 369 (1971).

testor who, while attending a rally at which it begins to rain, evidences his disrespect for the American flag by contemptuously covering himself with it in order to avoid getting wet, would be prosecuted under the Massachusetts statute. Yet a member of the American Legion who, caught in the same rainstorm while returning from an 'America— Love It or Leave It' rally, similarly uses the flag, but does so regrettably and without a contemptuous attitude, would *not* be prosecuted." 471 F. 2d, at 102 (emphasis in original).

Where inherently vague statutory language permits such selective law enforcement, there is a denial of due process.

### III

Appellant's arguments that the "treats contemptuously" phrase is not impermissibly vague, or at least should not be so held in this case, are unpersuasive. Appellant devotes a substantial portion of his opening brief, as he did his oral argument, to the contention that Goguen failed to preserve his present void-for-vagueness claim for the purposes of federal habeas corpus jurisdiction. Appellant concedes that the issue of "vagueness as applied" is properly before the federal courts,[18] but contends that Goguen's only arguable claim is that the statute is vague on its face. The latter claim, appellant insists, was not presented to the state courts with the requisite fair precision. *Picard* v. *Connor,* 404 U. S. 270 (1971). This exhaustion-of-remedies argument is belatedly raised,[19] and it fails to take the full measure of

---

[18] Reply Brief for Appellant 4.

[19] Goguen filed his federal habeas corpus petition subsequent to *Picard* v. *Connor,* 404 U. S. 270 (1971). Yet it appears that appellant did not raise his present exhaustion-of-remedies argument before the District Court. That court commented specifically on this

Goguen's efforts to mount a vagueness attack in the state courts.[20] We do not deal with the point at length, however, for we find the relevant statutory language impermissibly vague as applied to Goguen. Without doubt the "substance" of this claim was "fairly presented" to the state courts under the exhaustion standards of *Picard, supra,* at 275, 278.

Appellant's exhaustion-of-remedies argument is premised on the notion that Goguen's behavior rendered him a hard-core violator as to whom the statute was not vague, whatever its implications for those engaged in different conduct. To be sure, there are statutes that

---

omission: "No contention is now made that [Goguen] has not exhausted state remedies, nor that the constitutional issues presented here were not raised appropriately in state proceedings." 343 F. Supp., at 164.

[20] Goguen filed in State Superior Court an unsuccessful motion to dismiss the complaint in which he cited the Fourteenth Amendment and alleged that the statute under which he was charged was "impermissibly vague and incapable of fair and reasonable interpretation by public officials." App. 1. This motion was also before the Massachusetts Supreme Judicial Court, since it was incorporated in Goguen's amended bill of exceptions. *Ibid.* In addition, Goguen's brief before that court raised vagueness points and cited vagueness cases. *Id.,* at 19, 26–27, citing *Lanzetta* v. *New Jersey,* 306 U. S. 451 (1939), and *Parker* v. *Morgan,* 322 F. Supp. 585 (WDNC 1971) (three-judge court) (North Carolina flag contempt statute void for vagueness and overbreadth). Appellant is correct in asserting that Goguen failed to compartmentalize in his state court brief the due process doctrine of vagueness and First Amendment concepts of overbreadth. See App. 19–24. But permitting a degree of leakage between those particular adjoining compartments is understandable. Cf. Note, The First Amendment Overbreadth Doctrine, 83 Harv. L. Rev. 844, 871–875 (1970). The highest state court's opinion, which dealt separately with Goguen's First Amendment and vagueness claims, *Commonwealth* v. *Goguen,* — Mass. —, —, 279 N. E. 2d 666, 667 (1972), indicates that that court was well aware that Goguen raised both sets of arguments.

by their terms or as authoritatively construed apply without question to certain activities, but whose application to other behavior is uncertain. The hard-core violator concept makes some sense with regard to such statutes. The present statute, however, is not in that category. This criminal provision is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct .is specified at all." *Coates* v. *City of Cincinnati*, 402 U. S. 611, 614 (1971). Such a provision simply has *no* core. This absence of any ascertainable standard for inclusion and exclusion is precisely what offends the Due Process Clause. The deficiency is particularly objectionable in view of the unfettered latitude thereby accorded law enforcement officials and triers of fact. Until it is corrected either by amendment or judicial construction, it affects all who are prosecuted under the statutory language. In our opinion the defect exists in this case. The language at issue is void for vagueness as applied to Goguen because it subjected him to criminal liability under a standard so indefinite that police, court, and jury were free to react to nothing more than their own preferences for treatment of the flag.

Turning from the exhaustion point to the merits of the vagueness question presented, appellant argues that any notice difficulties are ameliorated by the narrow subject matter of the statute, *viz.*, "actual" flags of the United States.[21] Appellant contends that this "takes some of the vagueness away from the phrase, 'treats contemptuously . . . .' "[22] Anyone who "wants notice as to what conduct this statute proscribes . . . , immediately knows that it has something to do with flags and if he

---

[21] Brief for Appellant 17; Tr. of Oral Arg. 9.

[22] *Ibid.*

wants to stay clear of violating this statute, he just has to stay clear of doing something to the United States flag." [23] Apart from the ambiguities presented by the concept of an "actual" flag,[24] we fail to see how this alleged particularity resolves the central vagueness question—the absence of any standard for defining contemptuous treatment.

Appellant's remaining arguments are equally unavailing. It is asserted that the first six words of the statute add specificity to the "treats contemptuously" phrase, and that the Massachusetts Supreme Judicial Court customarily construes general language to take on color from more specific accompanying language. But it is conceded that Goguen was convicted under the general phrase alone, and that the highest state court did not rely on any general-to-specific principle of statutory

---

[23] *Ibid.*

[24] At the time of Goguen's prosecution, the statute referred simply to "the flag of the United States . . . ," without further definition. That raises the obvious question whether Goguen's miniature cloth flag constituted "the flag of the United States . . . ." Goguen argued unsuccessfully before the state courts that the statute applied only to flags that met "official standards" for proportions, such as relation of height to width and the size of stripes and the field of stars, and that the cloth he wore did not meet those standards. Tr. of Oral Arg. 11–12, 24–26; App. 2. There was no dispute that Goguen's adornment had the requisite number of stars and stripes and colors. Tr. of Oral Arg. 11–12. The Massachusetts Supreme Judicial Court found Goguen's cloth flag to be covered by the statute, noting that "[t]he statute does not require that the flag be 'official,'" *Commonwealth* v. *Goguen,* —— Mass., at ——, 279 N. E. 2d, at 668. The lower federal courts did not address this holding, nor do we. We note only that the Massachusetts Legislature apparently sensed an ambiguity in this respect, because subsequent to Goguen's prosecution it amended the statute in an effort to define what it had meant by the "flag of the United States." See n. 3, *supra.*

interpretation in this case.[25]  Appellant further argues
that the Supreme Judicial Court in Goguen's case has
restricted the scope of the statute to intentional con-
tempt.[26]  Aside from the problems presented by an
appellate court's limiting construction in the very case
in which a defendant has been tried under a previously
unnarrowed statute,[27] this holding still does not clarify
what conduct constitutes contempt, whether intentional
or inadvertent.

Finally, appellant argues that state law enforcement
authorities have shown themselves ready to interpret
this penal statute narrowly and that the statute, prop-
erly read, reaches only direct, immediate contemptuous
acts that "actually impinge upon the physical integrity
of the flag . . . ." [28]  There is no support in the record
for the former point.[29]  Similarly, nothing in the state

[25] Tr. of Oral Arg. 48.

[26] The Massachusetts court commented simply that "[t]he jury
could infer that the violation was intentional without reviewing any
words of the defendant." *Commonwealth* v. *Goguen, supra,* at —,
279 N. E. 2d, at 668.  Thus, the court held that the jury could infer
intent merely from Goguen's conduct.  This is apparently also a
holding that the jury *must* find contemptuous intent under the
statute, although the requirement amounts to very little since it is
so easily satisfied.  The court's reference to verbal communication
reflected Goguen's reliance on *Street* v. *New York,* 394 U. S. 576
(1969).

[27] *E. g., Ashton* v. *Kentucky,* 384 U. S. 195, 198 (1966).

[28] Brief for Appellant 22.

[29] With regard to prosecutorial policies, appellant cites two pub-
lished opinions of the Massachusetts Attorney General.  4 Op. Atty.
Gen. 470–473 (1915) (reproduced in Brief for Appellant 30); Report
of Atty. Gen., Pub. Doc. No. 12, p. 192 (1968) (reproduced
in Jurisdictional Statement App. 53).  Appellant concedes that
neither deals with the contempt portion of the statute under which
Goguen was convicted.  Thus, they are not in point here.  They
provided guidance to no one on the relevant statutory language.
Nevertheless, appellant is correct that they show a tendency on the

court's opinion in this case or in any earlier opinion of that court sustains the latter. In any event, Goguen was charged only under the wholly open-ended language of publicly treating the flag "contemptuously." There was no allegation of physical desecration.

There are areas of human conduct where, by the nature of the problems presented, legislatures simply cannot establish standards with great precision. Control of the broad range of disorderly conduct that may inhibit a policeman in the performance of his official duties may be one such area, requiring as it does an on-the-spot assessment of the need to keep order. Cf. *Colten* v. *Kentucky,* 407 U. S. 104 (1972). But there is no comparable reason for committing broad discretion to law enforcement officials in the area of flag contempt. Indeed, because display of the flag is so common and takes so many forms, changing from one generation to another and often difficult to distinguish in principle, a legislature should define with some care the flag behavior it intends to outlaw. Certainly nothing prevents a legislature from defining with substantial specificity what

---

part of the State Attorney General to read other portions of the statute narrowly. At the same time, they reflect the lack of precision recurring throughout the Massachusetts flag-misuse statute. The 1915 opinion noted that a literal reading of one portion of the statute, prohibiting exhibition of engravings of the flag on certain articles, would make it a criminal offense to display the flag itself "in many of its cheaper and more common forms." Brief for Appellant 31–32. The State Attorney General concluded that this would be a "manifest absurdity." *Id.,* at 32. The 1968 opinion advised that a flag representation painted on a door was not "a flag of the United States" within the meaning of the statute. Jurisdictional Statement App. 53–55. A contrary interpretation would "raise serious questions under the First and Fourteenth Amendments . . . ," given the requirement that behavior made criminal must be "plainly prohibited by the language of the statute." *Id.,* at 54.

constitutes forbidden treatment of United States flags.[30] The statutory language at issue here fails to approach that goal and is void for vagueness.[31] The judgment is affirmed.[32]

*It is so ordered.*

---

[30] The federal flag desecration statute, for example, reflects a congressional purpose to do just that. In response to a warning by the United States Attorney General that to use such unbounded terms as "defies" or "casts contempt . . . either by word or act" is "to risk invalidation" on vagueness grounds, S. Rep. No. 1287, 90th Cong., 1st Sess., 5 (1968); H. R. Rep. No. 350, 90th Cong., 1st Sess., 7 (1967), the bill which became the federal statute was amended, 113 Cong. Rec. 16449, 16450 (1967), to reach only acts that physically damage the flag. The desecration provision of the statute, 18 U. S. C. § 700 (a), declares:

"(a) Whoever knowingly casts contempt upon any flag of the United States by publicly mutilating, defacing, defiling, burning, or trampling upon it shall be fined not more than $1,000 or imprisoned for not more than one year, or both."

The legislative history reveals a clear desire to reach only defined physical acts of desecration. "The language of the bill prohibits intentional, willful, not accidental or inadvertent public physical acts of desecration of the flag." H. R. Rep. No. 350, *supra*, at 3; S. Rep. No. 1287, *supra*, at 3. The act has been so read by the lower federal courts, which have upheld it against vagueness challenges. *United States* v. *Crosson,* 462 F. 2d 96 (CA9) cert. denied, 409 U. S. 1064 (1972); *Joyce* v. *United States,* 147 U. S. App. D. C. 128, 454 F. 2d 971 (1971), cert. denied, 405 U. S. 969 (1972). See *Hoffman* v. *United States,* 144 U. S. App. D. C. 156, 445 F. 2d 226 (1971).

[31] We are aware, of course, of the universal adoption of flag desecration or contempt statutes by the Federal and State Governments. See n. 30, *supra.* The statutes of the 50 States are synopsized in Hearings on H. R. 271 et al., before Subcommittee No. 4 of the House Committee on the Judiciary, 90th Cong., 1st Sess., ser. 4, pp. 324–346 (1967). Most of the state statutes are patterned after the Uniform Flag Law of 1917, which in § 3 provides:

"No person shall publicly mutilate, deface, defile, defy, trample

Mr. Justice White, concurring in the judgment.

It is a crime in Massachusetts if one mutilates, tramples, defaces or "treats contemptuously" the flag of the United States. Appellee Goguen was convicted of treating the flag contemptuously, the evidence being that he wore a likeness of the flag on the seat of his pants. The Court holds this portion of the statute too vague to provide an ascertainable standard of guilt in any situation, including this one. Although I concur in the judgment of affirmance for other reasons, I cannot agree with this rationale.[1]

upon, or by word or act cast contempt upon any such flag, standard, color, ensign or shield."

Compare 9B Uniform Laws Ann. 52–53 (1966), with Hearings on H. R. 271 et al., *supra*, at 321–346. Because it is stated in the disjunctive, this language, like that before us, makes possible criminal prosecution solely for casting contempt upon the flag. But the validity of statutes utilizing this language, insofar as the vagueness doctrine is concerned, will depend as much on their judicial construction and enforcement history as their literal terms.

[32] We have not addressed Goguen's First Amendment arguments because, having found the challenged statutory language void for vagueness, there is no need to decide additional issues. Moreover, the skeletal record in this case, see n. 1, *supra*, affords a poor opportunity for the careful consideration merited by the importance of the First Amendment issues Goguen has raised.

[1] There has been recurring litigation, with diverse results, over the validity of flag use and flag desecration statutes. Representative of the federal and state cases are the following: *Thoms* v. *Heffernan,* 473 F. 2d 478 (CA2 1973); *Long Island Vietnam Moratorium Committee* v. *Cahn,* 437 F. 2d 344 (CA2 1970); *United States* v. *Crosson,* 462 F. 2d 96 (CA9), cert. denied, 409 U. S. 1064 (1972); *Joyce* v. *United States,* 147 U. S. App. D. C. 128, 454 F. 2d 971 (1971), cert. denied, 405 U. S. 969 (1972); *Deeds* v. *Beto,* 353 F. Supp. 840 (ND Tex. 1973); *Oldroyd* v. *Kugler,* 327 F. Supp. 176 (NJ 1970), rev'd, 461 F. 2d 535 (CA3 1972), abstention on remand, 352 F. Supp. 27, aff'd, 412 U. S. 924 (1973); *Sutherland* v. *DeWulf,* 323 F. Supp. 740 (SD Ill. 1971); *Parker* v. *Morgan,* 322

I

It is self-evident that there is a whole range of conduct that anyone with at least a semblance of common sense would know is contemptuous conduct and that would be covered by the statute if directed at the flag. In these instances, there would be ample notice to the actor and no room for undue discretion by enforcement officers. There may be a variety of other conduct that might or might not be claimed contemptuous by the State, but unpredictability in those situations does not change the certainty in others.

I am also confident that the statute was not vague with respect to the conduct for which Goguen was arrested and convicted. It should not be beyond the reasonable comprehension of anyone who would conform his conduct to the law to realize that sewing a flag on the seat of his pants is contemptuous of the flag. The

---

F. Supp. 585 (WDNC 1971); *Crosson* v. *Silver*, 319 F. Supp. 1084 (Ariz. 1970); *Hodsdon* v. *Buckson*, 310 F. Supp. 528 (Del. 1970), rev'd on other grounds *sub nom. Hodsdon* v. *Stabler*, 444 F. 2d 533 (CA3 1971); *United States* v. *Ferguson*, 302 F. Supp. 1111 (ND Cal. 1969); *State* v. *Royal*, 113 N. H. 224, 305 A. 2d 676 (1973); *State* v. *Zimmelman*, 62 N. J. 279, 301 A. 2d 129 (1973); *State* v. *Spence*, 81 Wash. 2d 788, 506 P. 2d 293, probable jurisdiction noted, 414 U. S. 815 (1973) (*sub judice*); *City of Miami* v. *Wolfenberger*, 265 So. 2d 732 (Fla. Dist. Ct. App. 1972); *State* v. *Mitchell*, 32 Ohio App. 2d 16, 288 N. E. 2d 216 (1972); *State* v. *Liska*, 32 Ohio App. 2d 317, 291 N. E. 2d 498 (1971); *State* v. *Van Camp*, 6 Conn. Cir. 609, 281 A. 2d 584 (1971); *State* v. *Waterman*, 190 N. W. 2d 809 (Iowa 1971); *State* v. *Saulino*, 29 Ohio Misc. 25, 277 N. E. 2d 580 (1971); *Deeds* v. *State*, 474 S. W. 2d 718 (Crim. App. Tex. 1971); *People* v. *Radich*, 26 N. Y. 2d 114, 257 N. E. 2d 30 (1970), aff'd by an equally divided court, 401 U. S. 531, rehearing denied, 402 U. S. 989 (1971); *People* v. *Cowgill*, 274 Cal. App. 2d 923, 78 Cal. Rptr. 853 (1969), appeal dismissed, 396 U. S. 371 (1970); *Hinton* v. *State*, 223 Ga. 174, 154 S. E. 2d 246 (1967), rev'd on other grounds *sub nom. Anderson* v. *Georgia*, 390 U. S. 206 (1968).

Supreme Judicial Court of Massachusetts, in affirming the conviction, stated that the "jury could infer that the violation was intentional . . . ." If he thus intended the very act which the statute forbids, Goguen can hardly complain that he did not realize his acts were in violation of the statute. "[T]he requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid. . . . [W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law." *Screws* v. *United States,* 325 U. S. 91, 101–102 (1945).

If it be argued that the statute in this case merely requires an intentional act, not a willful one in the sense of intending what the statute forbids, then it must be recalled that appellee's major argument is that wearing a flag patch on his trousers was conduct that "clearly expressed an idea, albeit unpopular or unpatriotic, about the flag or about the country it symbolizes . . . . Goguen may have meant to show that he believed that America was a fit place only to sit on, or the proximity to that portion of his anatomy might have had more vulgar connotations. Nonetheless, the strong and forceful communication of ideas is unmistakable." App. 13. Goguen was under no misapprehension as to what he was doing and as to whether he was showing contempt for the flag of the United States. As he acknowledges in his brief here, "it was necessary for the jury to find that appellee conveyed a contemptuous attitude in order to convict him." I cannot, therefore, agree that the Massachusetts statute is vague as to Goguen; and if not vague as to his conduct, it is irrelevant that it may be vague in other contexts with respect to other

conduct. "In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *United States* v. *National Dairy Products Corp.*, 372 U. S. 29, 33 (1963). Statutes are not "invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *Id.*, at 32.

The unavoidable inquiry, therefore, becomes whether the "treats contemptuously" provision of the statute, as applied in this case, is unconstitutional under the First Amendment. That Amendment, of course, applies to speech and not to conduct without substantial communicative intent and impact. Even though particular conduct may be expressive and is understood to be of this nature, it may be prohibited if necessary to further a nonspeech interest of the Government that is within the power of the Government to implement. *United States* v. *O'Brien*, 391 U. S. 367 (1968).

There is no doubt in my mind that it is well within the powers of Congress to adopt and prescribe a national flag and to protect the integrity of that flag. Congress may provide for the general welfare, control interstate commerce, provide for the common defense, and exercise any powers necessary and proper for those ends. These powers, and the inherent attributes of sovereignty as well, surely encompass the designation and protection of a flag. It would be foolishness to suggest that the men who wrote the Constitution thought they were violating it when they specified a flag for the new Nation, Act of Jan. 13, 1794, 1 Stat. 341, c. 1, just as they had for the Union under the Articles of Confederation. 8 Journals of the Continental Congress 464 (June 14, 1777). It is a fact of history that flags have been associated with nations and with government at all levels,

as well as with tribes and families. It is also a historical fact that flags, including ours, have played an important and useful role in human affairs. One need not explain fully a phenomenon to recognize its existence and in this case to concede that the flag is an important symbol of nationhood and unity, created by the Nation and endowed with certain attributes. Conceived in this light, I have no doubt about the validity of laws designating and describing the flag and regulating its use, display, and disposition. The United States has created its own flag, as it may. The flag is a national property, and the Nation may regulate those who would make, imitate, sell, possess, or use it.

I would not question those statutes which proscribe mutilation, defacement, or burning of the flag or which otherwise protect its physical integrity, without regard to whether such conduct might provoke violence. Neither would I find it beyond congressional power, or that of state legislatures, to forbid attaching to or putting on the flag any words, symbols, or advertisements.[2] All of these objects, whatever their nature, are foreign to the flag, change its physical character, and interfere with its design and function. There would seem to be little question about the power of Congress to forbid the mutilation of the Lincoln Memorial or to prevent overlaying it with words or other objects. The flag is itself a monument, subject to similar protection.

II

I would affirm Goguen's conviction, therefore, had he been convicted for mutilating, trampling upon, or defacing the flag, or for using the flag as a billboard for

---

[2] For a treatment of statutes protective of the flag, see Rosenblatt, Flag Desecration Statutes: History and Analysis, 1972 Wash. U. L. Q. 193.

commercial advertisements or other displays. The Massachusetts statute, however, does not stop with proscriptions against defacement or attaching foreign objects to the flag. It also makes it a crime if one "treats contemptuously" the flag of the United States, and Goguen was convicted under this part of the statute. To violate the statute in this respect, it is not enough that one "treat" the flag; he must also treat it "contemptuously," which, in ordinary understanding, is the expression of contempt for the flag. In the case before us, as has been noted, the jury must have found that Goguen not only wore the flag on the seat of his pants but also that the act—and hence Goguen himself—was contemptuous of the flag. To convict on this basis is to convict not to protect the physical integrity or to protect against acts interfering with the proper use of the flag, but to punish for communicating ideas about the flag unacceptable to the controlling majority in the legislature.[3]

---

[3] Massachusetts has not construed its statute to eliminate the communicative aspect of the proscribed conduct as a crucial element of the violation. In *State* v. *Royal,* 113 N. H. 224, 305 A. 2d 676 (1973), the New Hampshire Supreme Court, noting among other things that the State has a valid interest in the physical integrity of the flag, rejected a facial attack on its flag desecration statute, which made it a crime to publicly mutilate, trample upon, defile, deface, or cast contempt upon the flag. The court construed the statute to be "directed at acts upon the flag and not 'at the expression of and mere belief in particular ideas.'" *Id.,* at 230, 305 A. 2d, at 680. The proscription against casting contempt upon the flag was to be understood as a general prohibition of acts of the same nature as the previously forbidden acts of mutilation and defacement, not as a proscription of the expression of ideas. Thus:

"Our statute is more narrowly drawn than some flag statutes. It deals only with the flag itself or any 'flag or ensign evidently purporting to be' the flag. *State* v. *Cline,* [113 N. H. 245], 305 A. 2d 673, decided this date. Also, as we construe it, our statute prohibits only acts of mutilation and defilement inflicted directly upon the flag

Neither the United States nor any State may require any individual to salute or express favorable attitudes toward the flag. *West Virginia Board of Education* v. *Barnette*, 319 U. S. 624 (1943). It is also clear under our cases that disrespectful or contemptuous spoken or written words about the flag may not be punished consistently with the First Amendment. *Street* v. *New York*, 394 U. S. 576 (1969). Although neither written nor spoken, an act may be sufficiently communicative to invoke the protection of the First Amendment, *Tinker* v. *Des Moines Independent Community School District*, 393 U. S. 503 (1969), and may not be forbidden by law except when incidental to preventing unprotected conduct or unless the communication is itself among those that fall outside the protection of the First Amendment. In *O'Brien, supra,* the Court sustained a conviction for draft card burning, although admittedly the burning was itself expressive. There, destruction of draft cards, whether communicative or not, was found to be inimical to important governmental considerations. But the Court made clear that if the concern of the law was with the expression associated with the act, the result would be otherwise:

> "The case at bar is therefore unlike one where the alleged governmental interest in regulating con-

itself and does not prohibit acts which are directed at the flag without touching it. The statute enumerates specific acts of flag desecration, namely 'mutilate, trample upon, defile, deface,' all of which involve physical acts upon the flag. The general term 'cast contempt' follows these enumerated specific acts. We hold that the phrase 'or cast contempt by . . . acts' as used in RSA 573:4 is limited to physical abuse type of acts similar to those previously enumerated in the statute. 2 Sutherland, Statutory Construction § 4909 (3d rev. ed. Horack 1943); *State* v. *Small,* 99 N. H. 349, 111 A. 2d 201 (1955); *State* v. *N. H. Gas & Electric Co.,* 86 N. H. 16, 163 A. 724 (1932)." *Id.,* at 227, 305 A. 2d, at 679.

duct arises in some measure because the communication allegedly integral to the conduct is itself thought to be harmful. In *Stromberg* v. *California*, 283 U. S. 359 (1931), for example, this Court struck down a statutory phrase which punished people who expressed their 'opposition to organized government' by displaying 'any flag, badge, banner, or device.' Since the statute there was aimed at suppressing communication it could not be sustained as a regulation of noncommunicative conduct." 391 U. S., at 382.

It would be difficult, therefore, to believe that the conviction in *O'Brien* would have been sustained had the statute proscribed only contemptuous burning of draft cards.

Any conviction under the "treats contemptuously" provision of the Massachusetts statute would suffer from the same infirmity. This is true of Goguen's conviction. And if it be said that the conviction does not violate the First and Fourteenth Amendments because Goguen communicated nothing at all by his conduct and did not intend to do so, there would then be no evidentiary basis whatsoever for convicting him of being "contemptuous" of the flag. I concur in the Court's judgment.

MR. JUSTICE BLACKMUN, with whom THE CHIEF JUSTICE joins, dissenting.

I agree with MR. JUSTICE WHITE in his conclusion that the Massachusetts flag statute is not unconstitutionally vague. I disagree with his conclusion that the words "treats contemptuously" are necessarily directed at protected speech and that Goguen's conviction for his immature antic therefore cannot withstand constitutional challenge.

I agree with MR. JUSTICE REHNQUIST when he concludes that the First Amendment affords no shield to Goguen's conduct. I reach that result, however, not on the ground that the Supreme Judicial Court of Massachusetts "would read" the language of the Massachusetts statute to require that "treats contemptuously" entails physical contact with the flag and the protection of its physical integrity, but on the ground that that court, by its unanimous rescript opinion, has in fact already done exactly that. The court's opinion states that Goguen "was not prosecuted for being 'intellectually . . . diverse' or for 'speech,' as in Street v. New York, 394 U. S. 576, 593–594 . . . ." Having rejected the vagueness challenge and concluded that Goguen was not punished for speech, the Massachusetts court, in upholding the conviction, has necessarily limited the scope of the statute to protecting the physical integrity of the flag. The requisite for "treating contemptuously" was found and the court concluded that punishment was not for speech—a communicative element. I, therefore, must conclude that Goguen's punishment was constitutionally permissible for harming the physical integrity of the flag by wearing it affixed to the seat of his pants. I accept the Massachusetts court's opinion at what I regard as its face value.

MR. JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE joins, dissenting.

I agree with the concurring opinion of my Brother WHITE insofar as he concludes that the Massachusetts law is not unconstitutionally vague, but I do not agree with him that the law under which appellee Goguen was convicted violates the First and Fourteenth Amendments. The issue of the application of the First Amendment to expressive conduct, or "symbolic speech," is

undoubtedly a difficult one, and in cases dealing with the United States flag it has unfortunately been expounded only in dissents and concurrences. See *Street* v. *New York,* 394 U. S. 576, 594 (1969) (Warren, C. J., dissenting), 609 (Black, J., dissenting), 610 (WHITE, J., dissenting), 615 (Fortas, J., dissenting); and *Cowgill* v. *California,* 396 U. S. 371 (1970) (Harlan, J., concurring). Nonetheless, since I disagree with the Court's conclusion that the statute is unconstitutionally vague, I must, unlike the Court, address appellant's First Amendment contentions.

The question whether the State may regulate the display of the flag in the circumstances shown by this record appears to be an open one under our decisions. *Halter* v. *Nebraska,* 205 U. S. 34 (1907); *Street* v. *New York, supra; Cowgill* v. *California, supra* (Harlan, J., concurring); *People* v. *Radich,* 26 N. Y. 2d 114, 257 N. E. 2d 30, aff'd by an equally divided Court, 401 U. S. 531 (1971).

What the Court rightly describes as "the slender record in this case," *ante,* at 568, shows only that Goguen wore a small cloth version of the United States flag sewn to the seat of his blue jeans. When the first police officer questioned him, he was standing with a group of people on Main Street in Leominster, Massachusetts. The people with him were laughing. When the second police officer saw him, he was "walking in the downtown business district of Leominster, wearing a short coat, casual type pants and a miniature American flag sewn on the left side of his pants." Goguen did not testify, and there is nothing in the record before us to indicate what he was attempting to communicate by his conduct, or, indeed, whether he was attempting to communicate anything at all. The record before us does not even conclusively reveal whether Goguen sewed the flag on the

pants himself, or whether the pants were manufactured complete with flag; his counsel here, however, who was also his trial counsel, stated in oral argument that of his own knowledge the pants were not manufactured with the flag on them. Finally, it does not appear whether appellee said anything during his journey through the streets of Leominster; his amended bill of exceptions to the Supreme Judicial Court of Massachusetts made no mention of any testimony indicating that he spoke at all.

Goguen was prosecuted under the Massachusetts statute set forth in the opinion of the Court, and has asserted here not only a claim of unconstitutional vagueness but a claim that the statute infringes his right under the First and Fourteenth Amendments.

## I

There is a good deal of doubt on this record that Goguen was trying to communicate any particular idea, and had he been convicted under a statute which simply prohibited improper display of the flag I would be satisfied to conclude that his conduct in wearing the flag on the seat of his pants did not come within even the outermost limits of that sort of "expressive conduct" or "symbolic speech" which is entitled to any First Amendment protection. But Goguen was convicted of treating the flag contemptuously by the act of wearing it where he did, and I have difficulty seeing how Goguen could be found by a jury to have treated the flag contemptuously by his act and still not to have expressed any idea at all. There are, therefore, in my opinion, at least marginal elements of "symbolic speech" in Goguen's conduct as reflected by this record.

Many cases which could be said to involve conduct no less expressive than Goguen's, however, have never been thought to require analysis in First Amendment

terms because of the presence of other factors. One who burns down the factory of a company whose products he dislikes can expect his First Amendment defense to a consequent arson prosecution to be given short shrift by the courts. The arson statute safeguards the government's substantial interest in preventing the destruction of property by means dangerous to human life, and an arsonist's motive is quite irrelevant. The same fate would doubtless await the First Amendment claim of one prosecuted for destruction of government property after he defaced a speed limit sign in order to protest the stated speed limit. Both the arsonist and the defacer of traffic signs have infringed on the property interests of others, whether of another individual or of the government. Yet Goguen, unlike either, has so far as this record shows infringed on the ordinary property rights of no one.

That Goguen owned the flag with which he adorned himself, however, is not dispositive of the First Amendment issue. Just as the government may not escape the reach of the First Amendment by asserting that it acts only in a proprietary capacity with respect to streets and parks to which it has title, *Hague* v. *CIO*, 307 U. S. 496, 514–516 (1939), a defendant such as Goguen may not escape the reach of the police power of the State of Massachusetts by asserting that his act affected only his own property. Indeed, there are so many well-established exceptions to the proposition that one may do what he likes with his own property that it cannot be said to have even the status of a general rule.

The very substantial authority of state and local governing bodies to regulate the use of land, and thereby to limit the uses available to the owner of the land, was established nearly a half century ago in *Euclid* v. *Ambler Realty Co.*, 272 U. S. 365 (1926). Land-use regulations

in a residential zoning district typically do not merely exclude malodorous and unsightly rendering plants; they often also prohibit erection of buildings or monuments, including ones open to the public, which might itself in an aesthetic sense involve substantial elements of "expressive conduct." The performance of a play may well constitute expressive conduct or "pure" speech, but a landowner may not for that reason insist on the right to construct and operate a theater in an area zoned for noncommercial uses. So long as the zoning laws do not, under the guise of neutrality, actually prohibit the expression of ideas because of their content, they have not been thought open to challenge under the First Amendment.

As may land, so may other kinds of property be subjected to close regulation and control. A person with an ownership interest in controlled drugs, or in firearms, cannot use them, sell them, and transfer them in whatever manner he pleases. The copyright laws, 17 U. S. C. § 1 *et seq.*, limit what use the purchaser of a copyrighted book may make of his acquisition. A company may be restricted in what it advertises on its billboards, *Packer Corp.* v. *Utah*, 285 U. S. 105 (1932).

The statute which Goguen violated, however, does not purport to protect the related interests of other property owners, neighbors, or indeed any competing ownership interest in the same property; the interest which it protects is that of the Government, and is not a traditional property interest.

Even in this, however, laws regulating use of the flag are by no means unique. A number of examples can be found of statutes enacted by Congress which protect only a peculiarly governmental interest in property otherwise privately owned. Title 18 U. S. C. § 504 prohibits the printing or publishing in actual size or in actual

color of any United States postage or revenue stamp, or of any obligation or security of the United States. It likewise prohibits the importation of any plates for the purpose of such printing. Title 18 U. S. C. § 331 prohibits the alteration of any Federal Reserve note or national bank note, and 18 U. S. C. § 333 prohibits the disfiguring or defacing of any national bank note or coin. Title 18 U. S. C. § 702 prohibits the wearing of a military uniform, any part of such uniform, or anything similar to a military uniform or part thereof without proper authorization. Title 18 U. S. C. § 704 prohibits the unauthorized wearing of service medals. It is not without significance that many of these statutes, though long on the books, have never been judicially construed or even challenged.

My Brother WHITE says, however, that whatever may be said of neutral statutes simply designed to protect a governmental interest in private property, which in the case of the flag may be characterized as an interest in preserving its physical integrity, the Massachusetts statute here is not neutral. It punishes only those who treat the flag contemptuously, imposing no penalty on those who "treat" it otherwise, that is, those who impair its physical integrity in some other way.

## II

Leaving aside for the moment the nature of the governmental interest in protecting the physical integrity of the flag, I cannot accept the conclusion that the Massachusetts statute must be invalidated for punishing only some conduct that impairs the flag's physical integrity. It is true, as the Court observes, that we do not have in so many words a "narrowing construction" of the statute from the Supreme Judicial Court of Massachusetts. But the first of this Court's decisions cited in the short

rescript opinion of the Supreme Judicial Court is *Halter* v. *Nebraska,* 205 U. S. 34 (1907), which upheld against constitutional attack a Nebraska statute which forbade the use of the United States flag for purposes of advertising. We also have the benefit of an opinion of the Attorney General of the Commonwealth of Massachusetts that the statute under which Goguen was prosecuted, being penal, " 'is not to be enlarged beyond its plain import, and as a general rule is strictly construed.' " Report of Atty. Gen., Pub. Doc. No. 12, pp. 192–193 (1968). With this guidance, and the further assistance of the content of the entire statutory prohibition, I think the Supreme Judicial Court would read the language "whoever publicly mutilates, tramples upon, defaces, or treats contemptuously the flag of the United States . . ." as carrying the clear implication that the contemptuous treatment, like mutilation, trampling upon, or defacing, must involve some actual physical contact with the flag itself. Such a reading would exclude a merely derogatory gesture performed at a distance from the flag, as well as purely verbal disparagement of it.*

If the statute is thus limited to acts which affect the physical integrity of the flag, the question remains whether the State has sought only to punish those who impair the flag's physical integrity for the purpose of disparaging it as a symbol, while permitting impairment

---

*To the extent that counsel for appellant who argued the cause in the Court of Appeals may have intimated a broader construction in the colloquy in that court quoted in this Court's opinion, *ante,* at 575–576. I would attach little weight to it. We have previously said that we are "loath to attach conclusive weight to the relatively spontaneous responses of counsel to equally spontaneous questioning from the Court during oral argument," *Moose Lodge No. 107* v. *Irvis,* 407 U. S. 163, 170 (1972), and if that be the case surely even less weight should be ascribed by us to a colloquy which took place in another court.

of its physical integrity by those who do not seek to disparage it as a symbol. If that were the case, holdings like *Schacht* v. *United States*, 398 U. S. 58 (1970), suggest that such a law would abridge the right of free expression.

But Massachusetts metes out punishment to anyone who publicly mutilates, tramples, or defaces the flag, regardless of his motive or purpose. It also punishes the display of any "words, figures, advertisements or designs" on the flag, or the use of a flag in a parade as a receptacle for depositing or collecting money. Likewise prohibited is the offering or selling of any article on which is engraved a representation of the United States flag.

The variety of these prohibitions demonstrates that Massachusetts has not merely prohibited impairment of the physical integrity of the flag by those who would cast contempt upon it, but equally by those who would seek to take advantage of its favorable image in order to facilitate any commercial purpose, or those who would seek to convey any message at all by means of imprinting words or designs on the flag. These prohibitions are broad enough that it can be fairly said that the Massachusetts statute is one essentially designed to preserve the physical integrity of the flag, and not merely to punish those who would infringe that integrity for the purpose of disparaging the flag as a symbol. While it is true that the statute does not appear to cover one who simply wears a flag, unless his conduct for other reasons falls within its prohibitions, the legislature is not required to address every related matter in an area with one statute. *Katzenbach* v. *Morgan,* 384 U. S. 641, 656–658 (1966). It may well be that the incidence of such conduct at the time the statute was enacted was not thought to warrant legislation in order to preserve the physical integrity of the flag.

In *United States* v. *O'Brien,* 391 U. S. 367 (1968), the Court observed:

"We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *Id.,* at 376.

Then, proceeding "on the assumption that the alleged communicative element in O'Brien's conduct [was] sufficient to bring into play the First Amendment," the Court held that a regulation of conduct was sufficiently justified

"if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.,* at 377.

While I have some doubt that the first enunciation of a group of tests such as those established in *O'Brien* sets them in concrete for all time, it does seem to me that the Massachusetts statute substantially complies with those tests. There can be no question that a statute such as the Massachusetts one here is "within" the constitutional power of a State to enact. Since the statute by this reading punishes a variety of uses of the flag which would impair its physical integrity, without regard to presence or character of expressive conduct in connection with those uses, I think the governmental interest is unrelated to the suppression of free expression. The question of whether the governmental interest is "substantial" is not easy to sever from the question of whether the restriction is "no greater than is essential to the furtherance of that interest," and I therefore treat those

two aspects of the matter together. I believe that both of these tests are met, and that the governmental interest is sufficient to outweigh whatever collateral suppression of expressive conduct was involved in the actions of Goguen. In so concluding, I find myself in agreement not only with my Brother WHITE in this case, but with those members of the Court referred to earlier in this opinion who dissented from the Court's disposition in the case of *Street* v. *New York,* 394 U. S. 576 (1969).

My Brother WHITE alludes to the early legislation both of the Continental Congress and of the Congress of the new Nation dealing with the flags, and observes: "One need not explain fully a phenomenon to recognize its existence and in this case to concede that the flag is an important symbol of nationhood and unity, created by the Nation and endowed with certain attributes. Conceived in this light, I have no doubt about the validity of laws designating and describing the flag and regulating its use, display, and disposition." I agree.

On September 17, 1787, as the last members of the Constitutional Convention were signing the instrument, James Madison in his "Notes" describes the occurrence of the following incident:

> "Whilst the last members were signing it Doctor Franklin looking towards the President's Chair, at the back of which a rising sun happened to be painted, observed to a few members near him, that Painters had found it difficult to distinguish in their art a rising from a setting sun. I have said he, often and often in the course of the Session, and the vicissitudes of my hopes and fears as to its issue, looked at that behind the President without being able to tell whether it was rising or setting: But now at length I have the happiness to know that it is a rising and not a setting sun." 4 Writings of James Madison 482–483 (Hunt ed. 1903).

Writing for this Court more than one hundred years later, Mr. Justice Holmes made the familiar statement:

> "[W]hen we are dealing with words that also are a constituent act, like the Constitution of the United States, we must realize that they have called into life a being the development of which could not have been foreseen completely by the most gifted of its begetters. It was enough for them to realize or to hope that they had created an organism; it has taken a century and has cost their successors much sweat and blood to prove that they created a nation. The case before us must be considered in the light of our whole experience and not merely in that of what was said a hundred years ago." *Missouri* v. *Holland,* 252 U. S. 416, 433 (1920).

From its earliest days, the art and literature of our country have assigned a special place to the flag of the United States. It figures prominently in at least one of Charles Willson Peale's portraits of George Washington, showing him as leader of the forces of the 13 Colonies during the Revolutionary War. No one who lived through the Second World War in this country can forget the impact of the photographs of the members of the United States Marine Corps raising the United States flag on the top of Mount Suribachi on the Island of Iwo Jima, which is now commemorated in a statue at the Iwo Jima Memorial adjoining Arlington National Cemetery.

Ralph Waldo Emerson, writing 50 years after the battles of Lexington and Concord, wrote:

> "By the rude bridge that arched the flood
> Their flag to April's breeze unfurled
> Here once the embattled farmers stood
> And fired the shot heard 'round the world."

Oliver Wendell Holmes, Senior, celebrated the flag that had flown on "Old Ironsides" during the War of 1812, and John Greenleaf Whittier made Barbara Frietchie's devotion to the "silken scarf" in the teeth of Stonewall Jackson's ominous threats the central theme of his familiar poem. John Philip Sousa's "Stars and Stripes Forever" and George M. Cohan's "It's a Grand Old Flag" are musical celebrations of the flag familiar to adults and children alike. Francis Scott Key's "Star Spangled Banner" is the country's national anthem.

While most of the artistic evocations of the flag occur in the context of times of national struggle, and correspondingly greater dependence on the flag as a symbol of national unity, the importance of the flag is by no means limited to the field of hostilities. The United States flag flies over every federal courthouse in our Nation, and is prominently displayed in almost every federal, state, or local public building throughout the land. It is the one visible embodiment of the authority of the National Government, through which the laws of the Nation and the guarantees of the Constitution are enforced.

It is not empty rhetoric to say that the United States Constitution, even the First and Fourteenth Amendments under which Goguen seeks to upset his conviction, does not invariably in the world of practical affairs enforce itself. Going back no further than the memories of most of us presently alive, the United States flag was carried by federal troops summoned by the President to enforce decrees of federal courts in Little Rock, Arkansas, in 1957, and in Oxford, Mississippi, in 1962.

The significance of the flag, and the deep emotional feelings it arouses in a large part of our citizenry, cannot be fully expressed in the two dimensions of a lawyer's brief or of a judicial opinion. But if the Government

may create private proprietary interests in written work and in musical and theatrical performances by virtue of copyright laws, I see no reason why it may not, for all of the reasons mentioned, create a similar governmental interest in the flag by prohibiting even those who have purchased the physical object from impairing its physical integrity. For what they have purchased is not merely cloth dyed red, white, and blue, but also the one visible manifestation of two hundred years of nationhood—a history compiled by generations of our forebears and contributed to by streams of immigrants from the four corners of the globe, which has traveled a course since the time of this country's origin that could not have been "foreseen . . . by the most gifted of its begetters."

The permissible scope of government regulation of this unique physical object cannot be adequately dealt with in terms of the law of private property or by a highly abstract, scholastic interpretation of the First Amendment. Massachusetts has not prohibited Goguen from wearing a sign sewn to the seat of his pants expressing in words his low opinion of the flag, of the country, or anything else. It has prohibited him from wearing there a particular symbol of extraordinary significance and content, for which significance and content Goguen is in no wise responsible. The flag of the United States is not just another "thing," and it is not just another "idea"; it is not primarily an idea at all.

Here Goguen was, so far as this record appears, quite free to express verbally whatever views it was he was seeking to express by wearing a flag sewn to his pants, on the streets of Leominster or in any of its parks or commons where free speech and assembly were customarily permitted. He was not compelled in any way to salute the flag, pledge allegiance to it, or make any

affirmative gesture of support or respect for it such as would contravene *West Virginia Board of Education* v. *Barnette,* 319 U. S. 624 (1943). He was simply prohibited from impairing the physical integrity of a unique national symbol which has been given content by generations of his and our forebears, a symbol of which he had acquired a copy. I believe Massachusetts had a right to enact this prohibition.