**Dennis Joseph FLORIO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–86–00849–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 25, 1988.

Russell G. Burwell, Texas City, for appellant.

Michael J. Guarino, Michael E. Clerk, Galveston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

In a jury trial, appellant was convicted of injury to a child by omission and sentenced to sixty years confinement in the Texas Department of Corrections. We affirm the judgment of the trial court.

Appellant lived with Cherelyn McComb and her two and one-half year old son, David, for two years. During that time, the three lived as a family. Even in his statement to police following the baby's death, appellant referred to Cherelyn as his wife. While Cherelyn worked, appellant cared for David. Cherelyn worked as a waitress on the night shift. She would leave for work shortly before 10 p.m. and return around six in the morning. Appellant generally drove her to work and would then remain at home with the baby. When

Cherelyn returned from work in the morning, appellant would watch David while she slept. Both Cherelyn and her mother testified that appellant was the primary disciplinarian in the household.

The Galveston County Medical Examiner, Dr. Korndorffer, testified that David McComb died at approximately 11 p.m. on Saturday, June 15th, 1985. The baby died of peritonitis, a serious infection of the abdominal lining, and septisemia, an infection of the general bloodstream, both caused by multiple blunt trauma to his abdomen and rectum. The baby was also diagnosed as suffering from severe dehydration, probably resulting from the high fever, vomiting, and diarrhea that are symptomatic of the peritonitis and septisemia; pneumoperitoneum, air within the abdominal cavity, caused by numerous forceful blows or kicks to the abdomen; and perforations of the rectum and small bowel. The baby's body was covered with numerous bruises and abrasions; a deep human bite mark was found on the baby's cheek; smaller, less serious bite marks were found on other parts of his body. His collar bone was broken as well.

Korndorffer stated that peritonitis and septisemia develop within approximately twenty-four hours of injury. However the broken collar bone, the bites and the abrasions occurred within a short time of the baby's death.

During the week prior to June 13, 1985, David was staying with Cherelyn's grandmother, Leatrice Haynes. On Thursday, June 13, Mrs. Haynes had a doctor's appointment, so Cherelyn's mother, Charlotte Pearson cared for the baby. Mrs. Pearson let David play in a wading pool in her back yard with her ten-year old son. Mrs. Pearson took photographs of the boys. The photograph in record shows David was a smiling, healthy two-year-old on that Thursday.

Cherelyn could not remember whether Mrs. Haynes brought David home on Thursday or Friday, but believed it was Friday, June 14, 1985. David had no bite marks, or cuts, or serious bruises when he returned from his grandmothers. He had only two old bruises on his head, which appellant had told her the baby got from falling.

Cherelyn left for work just before ten that Friday night. When she returned from work Saturday morning, David was not feeling well. He had a temperature, was vomiting, and listless. He continued to vomit throughout the day. While Cherelyn could not recall if David was also suffering from diarrhea, pictures of the apartment taken the night of David's death confirm the police officers' observations that dirty diapers and fecal matter were found throughout the apartment.

Appellant was in and out of the apartment on Saturday while Cherelyn was at home. Around three or four in the afternoon, Cherelyn was awakened by the sound of a baby crying. She thought the sound was coming from another apartment until she heard a slap. She entered the living room and saw appellant "grinning like he had got caught [a]nd the baby was sitting at his feet, more or less afraid to move."

Later that evening, appellant returned after having a few beers and found he had forgotten his key. He became angry because, even after Cherelyn unlocked it, the door would not open. He knocked the door open and began screaming and yelling at her. A verbal and physical fight ensued, during which appellant bit Cherelyn on the arm and hand.

Since appellant was angry and would not drive her to work, Cherelyn walked there shortly before ten o'clock that night. When she left for work, David was sick, but had no bites, bruises or abrasions. Around midnight, appellant went to the Kettle Restaurant, where Cherelyn worked, and asked her for money. It was unusual for him to come there while she was working. He was in "a very bad mood" and, when she told him she had no money, he stormed out in a rage before she could ask about the baby.

Sometime around 2:15 a.m., appellant went to Cherelyn's mother's home and asked her brother, Michael, to come over to the apartment to eat french fries. Michael did not want to go to the apartment but did

walk with him to the Galveston Seawall, where they talked for about twenty or thirty minutes before Michael returned home. Appellant made no mention of David.

Between three and four in the morning, appellant returned to the Kettle Restaurant and told Cherelyn something was wrong with the baby. She asked appellant "if the baby was breathing okay", and he responded, "[n]othing like that, just that he is sick and you have to come home." Appellant then drove her home.

When they arrived at the apartment, Cherelyn recalled the baby's eyes were open, but he did not look as though he was alive. She picked the baby up from the floor and placed him on the couch. While appellant breathed into the baby's mouth and said "it looks like he is breathing", Cherelyn ran to the neighbors to phone the paramedics. Appellant then carried the body to that apartment, where the emergency medical technicians [EMT's] found it. The EMT's told the police officers at the scene there was nothing they could do. The officers and the EMT's noted that the baby had been dead for some time, since livor mortis, the process by which the blood begins to pool after death, had already set-in.

Both appellant and Cherelyn were taken into custody for questioning, and later indicted for injury to a child. In exchange for the state's agreement to recommend a probated sentence, Cherelyn agreed to testify for the state.

Points one, three, four and five raise various alleged errors stemming from the state's failure to plead and prove that appellant had a statutory duty to care for the deceased baby. Appellant cites a number of cases to support his contention that one may be guilty of serious bodily injury to child by omission only if the state establishes violation of a statutory duty to provide care. *See e.g., Smith v. State,* 603 S.W.2d 846 (Tex.Crim.App.1980); *Lang v. State,* 586 S.W.2d 532 (Tex.Crim.App.1979).

However, all the cases cited by appellant were cases arising prior to the amendment of Tex.Penal Code Ann. § 22.04 (Vernon Supp.1988). Until 1977 § 22.04 read, in pertinent part, as follows: "[a] person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence *engages in conduct* that causes serious bodily injury, ... to a child who is 14 years of age or younger." [Emphasis added]. The legislature amended the statute in 1977 to read: "[a] person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, *by act or omission,* engages in conduct that causes to a child...." [Emphasis added].

■ Texas Penal Code Ann. § 6.01(c) (Vernon 1974) defines culpability by omission: "[a] person who omits to perform an act does not commit an offense unless *a statute provides that the omission is an offense* or otherwise provides that he has a duty to perform the act." [Emphasis added]. Section 6.01 clearly provides two different paths of creating guilt by omission. A statutory duty is required only if the statute itself does not penalize an omission. Section 22.04 does create culpability for omissions. In doing so, the legislature has merely continued the special protection we have always afforded to children. The legislature has acknowledged that, in contemporary society, children are regularly placed under the dominion of non-parent caretakers who must be accountable for their actions, or inactions. Therefore, points of error one, three, four and five are overruled.

■ In point of error number two, appellant alleges that if violation of a statutory duty is not required, then § 22.04 is unconstitutionally vague. Appellant presents a variety of hypothetical circumstances for this court's consideration. However, the court must deal with the case at hand, and not with imaginary ones. *Yazoo & Mississippi Valley Railroad v. Jackson Vinegar Co.,* 226 U.S. 217, 219, 33 S.Ct. 40, 41, 57 L.Ed. 193 (1912). In *Clark v. State,* the Court of Criminal Appeals held that in a vagueness challenge, where no First Amendment rights are involved, the reviewing court need only scrutinize the statute to determine whether it is impermissibly vague as applied to the challenging party's specific conduct. 665 S.W.2d 476,

483 (Tex.Crim.App.1984), *citing Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

Therefore, this court need only determine that, as applied to cases like the one before us, the statute is valid. How the court may apply it to other cases, whether its general words may be treated as more or less restrained, and how far parts of it may be sustained if others fail, are matters upon which we need not speculate now. *Yazoo*, 226 U.S. at 220, 33 S.Ct. at 41; *United States v. Raines*, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960).

■ A statute is not vague merely because it is imprecise. *Briggs v. State*, 740 S.W.2d 803, 806 (Tex.Crim.App. 1987), *citing Coats v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). If a statute requires a person to conform his conduct to an imprecise, but comprehensible normative standard, it is not void for vagueness. *Smith v. Goguen*, 415 U.S. 566, 578, 94 S.Ct. 1242, 1249, 39 L.Ed.2d 605 (1974). There are statutes that by their terms, or as authoritatively construed, apply without question to certain activities, but whose application to other behavior is uncertain. The "hard-core violator" concept makes sense with regard to such statutes. *Smith*, 415 U.S. at 578, 94 S.Ct. at 1249. If appellant's conduct constitutes the type of hard-core conduct which would be prohibited under any construction which we might give the statute, then it is constitutional as applied to him. *Deeds v. State*, 474 S.W.2d 718, 722 (Tex.Crim.App.1971). Appellant's conduct is just such conduct. Further, a statute's literal scope may be narrowed by the state courts' construction of it. *Smith*, 415 U.S. at 573, 94 S.Ct. at 1247. We hold that where, as in the case before us, a person has assumed responsibility for the care of a child, failure to seek or provide adequate care to prevent serious bodily injury to that child subjects them to liability under § 22.04.

Void for vagueness simply means that criminal responsibility should not attach when one could not *reasonably* understand ʳhat his contemplated conduct is pro-

scribed. In determining the sufficiency of the notice, a statute must of necessity be examined in the light of the conduct with which a defendant is charged. *Bragg v. State*, 740 S.W.2d 574 (Tex.App.—Houston [1st Dist.] 1987, no pet.). We hold that a person of ordinary intelligence such as appellant, having assumed responsibility for a child, would have fair notice that his failure to provide medical care to the deceased under the existing circumstances would subject him to criminal liability under this statute.

This court recognizes that no narrowing construction had been applied to § 22.04 by a court prior to appellant's trial; however, appellant was effectively tried under this narrow construction of the statute. The jury was charged to find appellant guilty only if they believed beyond a reasonable doubt that he had agreed to care for, or had taken responsibility for, the deceased, and had failed to seek or provide proper care for him. That being the case, the statute was constitutionally applied to appellant, and his second point of error is overruled.

Appellant argues in points six and seven that there was no evidence, or insufficient evidence, that he had agreed to care, or had taken responsibility for David McComb. We disagree.

■ In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the verdict. *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). If there is evidence the trier of fact believes, that establishes an issue beyond a reasonable doubt, we are not in a position to reverse the judgment on sufficiency. *See Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim.App.1984), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984).

The evidence revealed appellant lived as a family for two years with Cherelyn McComb and David. Appellant referred to Cherelyn as his wife. While she worked, he cared for David. When Cherelyn returned from work in the morning, appellant would continue to watch David while she slept. Both Cherelyn and her mother testi-

fied that appellant was the primary disciplinarian in the household. The jury, as a reasonable trier of fact could, from the evidence before them, find beyond a reasonable doubt that appellant had assumed responsibility for the care of David McComb. Accordingly, points of error six and seven are overruled.

In point of error eight, appellant alleges the trial court erred in submitting a charge on parties that authorized his conviction, as a party, for a crime for which he could not be convicted as a principal. His contention is without merit. The amended statute does permit the conviction of appellant as a principal. Additionally, Texas law has long recognized a person acting with another may be convicted of a crime he could not otherwise commit. *Rozell v. State*, 502 S.W.2d 16, 17 (Tex.Crim.App.1973), *citing Coots v. State*, 110 Tex.Crim. 105, 7 S.W.2d 539 (1928). Texas has codified the concept in Tex.Penal Code Ann. § 7.03(1) (Vernon 1974), which states "... it is no defense: (1) that the actor belongs to a class of persons that by definition of the offense is legally incapable of committing the offense in an individual capacity....". Point of error eight is overruled.

Appellant complains, in point of error nine, that the instruction on party liability was in error, since it failed to apply the law of parties to the facts of the case. The evidence presented to the jury was sufficient to support a verdict of guilt as a primary actor. Since it is abundantly clear from the state's final argument that it sought a finding of guilt as a primary actor, and not as a party, any error was harmless. *Johnson v. State*, 739 S.W.2d 299 (Tex.Crim.App.1987). Point of error number nine is overruled.

Accordingly, the judgment of the trial court is affirmed.

SEARS, Justice, dissenting.

I respectfully dissent. Although this is a particularly revolting crime, the state has made the fundamentally fatal mistake of charging a crime by omission rather than by commission.

This appellant was convicted on proof that does not constitute an offense. The Court of Criminal Appeals, *subsequent* to the 1977 legislative amendment to TEX.PENAL CODE ANN. § 22.04, held that it was reversible error to charge a crime by omission without alleging a statutory duty to act. *Smith v. State*, 603 S.W.2d 846 (Tex.Crim.App.1980). Although the defendant Smith was tried in 1975, prior to the 1977 amendment, the Court of Criminal Appeals (en banc) reaffirmed their *Ronk*[1] opinion and held that the failure to allege a duty to act was a fundamental defect in an indictment alleging a crime of omission. The court did not distinguish the amended language in § 22.04, and the court specifically cited § 6.01(c) for the proposition that "... a person who omits to perform an act does not commit an offense unless a statute provides that the omission is an offense or otherwise provides that he has a duty to act." *Smith v. State*, 603 S.W.2d at 847.

I do not agree with the majority that the 1977 legislature "created" a new criminal offense by their amendment to § 22.04. The Texas Legislature has only seen fit to place a statutory duty to provide medical care to a child on the *parents* of that child. TEX.FAMILY CODE ANN. § 12.04(3) (Vernon 1986). Until the legislature enacts a statute providing that a "live-in" of a parent has a duty to provide such care for a child, we should not try to create an offense because we are shocked by the *non-action* of the appellant.

I would follow the holding of the Texas Court of Criminal Appeals in *Smith* and reverse and remand the cause to the trial court for a new trial.

---

**1.** *Ronk v. State,* 544 S.W.2d 123 (Tex.Crim.App.   1976).