FORBES et al., Plaintiffs,

v.

**Grant WOODS et al., Defendants.**

**No. Civ–96–288–TUC–WDB.**

United States District Court,
D. Arizona.

Sept. 30, 1999.

Bebe Jill Anderson, Center for Reproductive Law & Policy, New York City, Julie Frances Kowitz, The Center for Reproductive Law & Policy, New York City, Michael O. Miller, Miller Smith LLP, Tucson, AZ, for plaintiffs.

Bruce L. Skolnik, Charlres R. Pyle, Atty. General's Office, Tucson, AZ, for defendants.

## ORDER

WILLIAM D. BROWNING, Senior District Judge.

### I. Factual and Procedural Background

Pending before the Court are Defendants' January 14, 1998 Motion for Summary Judgment and Plaintiffs' January 14, 1998 Motion for Summary Judgment. Ten Plaintiffs have asked the Court to determine that A.R.S. § 36–2302 (experimentation on human fetus or embryo prohibited; physician-patient privilege inapplicable), A.R.S. § 32–1401(25)(x) (fetal experiments in violation of § 36–2302 is unprofessional conduct), and A.R.S. § 32–1854(45) (defining fetal experiments in violation of § 36–2302 as unprofessional conduct whether occurring in this state or elsewhere) are unconstitutional because they violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment. After a hearing on February 23, 1998, the Court certified a defendant class of all County Attorneys who have the authority to enforce A.R.S. § 36–2303, (making it a class 5 felony to use any human fetus or embryo or part thereof resulting from an induced abortion in any manner for medical experimentation) in their official capacities, with the Attorney General as the class representative.

The Plaintiffs include: (1) four people diagnosed with Parkinson's disease: Forbes, Anderson, Bohn, and Summers; (2) Christopher Tish, a board member of the Arizona Chapter of the American Parkinson's Disease Association; (3) Planned Parenthood of Central, Northern, and Southern Arizona; and (4) three doctors: Snider, Melcher, and Tamis. Dr. Snider is a neurologist specializing in treating Parkinson's disease. Dr. Melcher is a semi-retired doctor who has treated many Parkinson patients and has served as President of the Arizona Parkinson's Institute from 1987–1992. Dr. Tamis is an obstetrician-gynecologist in private practice spe-cializing in treatments for infertility, who was investigated under the statutes at issue for conducting a study to learn if hypertension drugs cross the placenta barrier. In this study, Dr. Tamis asked women who had decided to terminate second trimester pregnancies if they would be willing to take a pill. The pill was administered shortly before the abortion, and after the abortion Dr. Tamis took a sample of the blood from the placenta. The blood sample was sent to a pharmaceutical company to test whether the medication had entered the placenta. All of the doctors brought this suit on behalf of themselves and their patients. The Attorney General is the defendant class representative, representing all Arizona County Attorneys and the Attorney General's Office.

The challenged statutes criminalize and classify as unprofessional conduct, medical or scientific experimentation or investigation involving a human fetus or embryo resulting from an induced abortion. Plaintiffs allege that these statutes are vague and confusing, serve no legitimate purpose, chill certain medical procedures, and prevent physicians from providing important health services. Plaintiffs make six claims.

1. The challenged statutes fail to specify which medical procedures constitute "experimentation" or "investigation." They also fail to define what constitutes a "routine pathological examination." Thus, § 36–2302 does not identify which pathological examinations of fetal tissue are prohibited. Therefore, the statutes fail to give physicians and researchers fair warning of prohibited acts and are susceptible to arbitrary enforcement, in contravention of the right to Due Process under the Fourteenth Amendment.

2. The challenged statutes prevent patients from receiving critical medical care without compelling or even rational justification, thus violating Plaintiffs' rights to privacy and lib-

erty guaranteed under the Fourteenth Amendment.

3. The statutes also infringe upon Plaintiffs' Fourteenth Amendment rights to privacy and liberty without compelling justification by preventing women from obtaining various medical services that would enable them to make reproductive health decisions and to choose childbirth.

4. The statutes violate Plaintiffs' Fourteenth Amendment rights to privacy and liberty by denying women necessary and appropriate information about maternal and fetal health.

5. The challenged statutes violate the Due Process Clause of the Fourteenth Amendment by interfering with physicians' right to practice their profession by preventing them from conducting research and rendering medical services that are in the best interest of their patients.

6. These statutes constitute unwarranted governmental interference with a woman's right to make anatomical gifts by forbidding women who have induced abortions from making donations although no such restrictions apply to women who spontaneously abort or whose children are stillborn or die after birth, in violation of the Equal Protection Clause of the Fourteenth Amendment.

Plaintiffs seek declaratory judgment that A.R.S. §§ 36–2302, 32–1401(25), and 32–1854(45) are unconstitutional. They also seek a permanent injunction against the Defendants, preventing them from enforcing the statutes. Additionally, Plaintiffs seek such other relief as the Court may deem appropriate, including reasonable attorney's fees and costs.

## II. Summary Judgment Standard

Summary judgment is proper where no genuine issue as to any material fact exists and the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The initial burden rests on the moving party to point out the absence of any genuine issue of material fact, but the moving party need not support its motion with affidavits or other supporting materials. *See* Fed.R.Civ.P. 56(a); *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once satisfied, the burden shifts to the opponent to demonstrate through production of probative (and admissible) evidence that an issue of fact remains to be tried. *See Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548. The nonmoving party may not rest on mere denials of the movant's pleadings, but must respond asserting specific facts showing a genuine issue exists precluding a grant of summary judgment. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The Court must accept the nonmovant's evidence as true and view all inferences in the light most favorable to the non-movant. *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987).

## III. Discussion

**A.R.S. § 36–2302, Experimentation on human fetus or embryo prohibited; physician-patient privilege inapplicable**

A. A person shall not knowingly use any human fetus or embryo, living or dead, or any parts, organs or fluids of any such fetus or embryo resulting from an induced abortion in any manner for any medical **experimentation** or scientific or medical **investigation** purposes except as is strictly necessary to diagnose a disease or condition in the mother of the fetus or embryo and only if the abortion was performed because of such disease or condition.

B. The physician-patient privilege as provided in § 13–4062, paragraph 4 shall not prevent the production of documents or records relevant to an investigation arising under this section. All documents or records produced in an action brought pursuant to this section shall be inspected by the court in camera, and before the documents or records are released

to the requesting party, the court shall remove the names and other identifying information, if any, of the patients and substitute pseudonyms.

C. This section shall not prohibit **routine pathological examinations** conducted by a medical examiner or hospital laboratory provided such pathological examination is not a part of or in any way related to any medical or scientific experimentation.

**A.R.S. § 36–2303. Violation; classification**

Any person who violates any provision of this article is guilty of a class 5 felony.

**A.R.S. § 32–1401 Definitions**

25. "Unprofessional conduct" includes the following, whether occurring in this state or elsewhere: . . .

(x) Fetal experiments conducted in violation of § 36–2302.

**A.R.S. § 32–1854. Definition of unprofessional conduct.**

"Unprofessional conduct" includes the following acts, whether occurring in this state or elsewhere: . . .

45. Fetal experiments conducted in violation of § 36–2302.

**Is A.R.S. § 36–2302 Unconstitutionally Vague?**

■ A law is void for vagueness in violation of Due Process where "persons of common intelligence must necessarily guess at meaning and differ as to application." *Smith v. Goguen,* 415 U.S. 566, 572 n. 8, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) (citations omitted). Due process requires that laws provide persons subject to regulation with a "reasonable opportunity to know what [conduct] is prohibited, so that [they] may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Women's Medical Professional Corp. v. Voinovich,* 911 F.Supp. 1051, 1063 (S.D.Ohio 1995). Due process requires that a law

must be sufficiently defined "to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *Colautti v. Franklin,* 439 U.S. 379, 390, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979); *see also Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). Additionally, the law must define the prohibited conduct with sufficient definiteness that it does not encourage arbitrary or discriminatory enforcement. *See Kolender,* 461 U.S. at 357, 103 S.Ct. 1855; *Colautti,* 439 U.S. at 390, 99 S.Ct. 675. Furthermore, vague standards of unlawful conduct, coupled with the prospect of arbitrary enforcement, will inevitably cause people to "steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Grayned,* 408 U.S. at 109, 92 S.Ct. 2294. It is a fundamental principle of due process that persons " 'of common intelligence' not be forced to guess at the meaning of the criminal law." *Smith v. Goguen,* 415 U.S. at 574, 94 S.Ct. 1242.

■ When reviewing a statute for vagueness, the court must "indulge a presumption of constitutionality." *Baggett v. Bullitt,* 377 U.S. 360, 372, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). In a civil context, if the law does not reach constitutionally protected conduct, the law must be found impermissibly vague in all of its applications. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). However, where "a statute imposes criminal penalties, the standard of certainty [that due process requires] is higher." *Village of Hoffman Estates,* 455 U.S. at 489, 102 S.Ct. 1186; *see also Kolender,* 461 U.S. at 358 n. 8, 103 S.Ct. 1855. Where a statute imposes a criminal penalty, the court can invalidate it even when there is some valid application. *See Kolender,* 461 U.S. at 358 n. 8, 103 S.Ct. 1855. Finally, the standard of certainty is particularly strict "where the uncertainty induced by the statute threatens to inhibit the exer-

cise of constitutionally protected rights." *Colautti*, 439 U.S. at 391, 99 S.Ct. 675.

In this case, the challenged statutes impose criminal penalties, and Plaintiffs allege that the statutes fail to give physicians fair warning of prohibited acts and are susceptible to arbitrary enforcement.

*Experimentation*

■ Against this backdrop of the requirements of due process, the Court considers the terms utilized in the challenged statutes. The Court will begin with the term "experimentation." Plaintiff cites three cases in which courts invalidated as void for vagueness state fetal "experimentation" statutes similar to that at issue here: *Jane L. v. Bangerter*, 61 F.3d 1493 (10th Cir.1995) (*rev'd and remanded on other grounds sub nom. Leavitt v. Jane L.*, 518 U.S. 137, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996)); *Margaret S. v. Edwards*, 794 F.2d 994 (5th Cir.1986); *Lifchez v. Hartigan*, 735 F.Supp. 1361 (N.D.Ill. 1990) *aff'd* 914 F.2d 260 (7th Cir.1990). The Court agrees with these decisions and finds two major difficulties with employing various forms of the term "experimentation."

First "[e]xperimentation is an ambiguous term that lacks a precise definition." *Jane L.*, 61 F.3d at 1500. Moreover, "there is no single definition of 'experimentation' in the scientific and medical communities." *Lifchez*, 735 F.Supp. at 1364; *see also* Aff. of Robert H. Tamis, M.D., ¶ 10 ("The term 'experimentation' is loosely used in medicine."). The court in *Lifchez* recognized at least four conceptually distinct connotations of the term experimentation: (1) "pure research, where there is no direct benefit to the subject being experimented on, and the only goal of the research is to increase the researcher's knowledge," (2) "any procedure that has not yet been sufficiently tested so the outcome is predictable or a procedure that departs from present-day practice," (3) "even standard techniques when those techniques are performed by a practitioner or clinic for the first time," and (4) "any medical therapy where the practitioner applies what he learns from one patient to another." *Lifchez* 735 F.Supp. at 1365; *cf. Margaret S.* 794 F.2d at 999 (medical treatment can be described as an experiment "whenever the results of the treatment are observed, recorded, and introduced into the data base that one or more physicians use in seeking better therapeutic methods"); *see also Jane L.*, 61 F.3d at 1500 (describing three alternative definitions). "Because there are several competing and equally viable definitions, the term 'experimentation' does not place health care providers on adequate notice of the legality of their conduct." *Jane L.*, 61 F.3d at 1501.

Second, even if a particular technique at some time is clearly "experimental," there is no adequate way of ascertaining with certainty when it ceases to be so. As the Court of Appeals for the Fifth Circuit stated, "experiments" evolve seamlessly into standard procedures:

> [P]hysicians do not and cannot distinguish clearly between medical experiments and medical tests ... [E]very medical test that is now "standard" began as an "experiment" that became standard through a gradual process of observing the results, confirming the benefits, and often modifying the technique.

*Margaret S.*, 794 F.2d at 999. "Because there is no magic moment when [a procedure] ceases to be experimental, [i]t is ... impossible to categorize a procedure as 'experimental' with any degree of accuracy." Tamis Aff. ¶ 10.

*Investigation*

The Court also finds that the term "investigation" is vague because it is an ambiguous term. For example, one definition is "to observe or study by close examination and systematic inquiry." *Webster's Tenth New Collegiate Dictionary* 616 (1995). Although this definition might cover pure research, it also could include other medical or scientific activities, such as diagnostic medical techniques.

*Routine*

The third term the Court finds to be vague is "routine." Section 36–2302(C) does not define routine pathological examination nor does any other regulation illuminate the meaning of "routine" in this context. The absence of a statutory definition of "routine pathological examination" is not remedied by any "official" standards in the medical community. No standard or guideline has been issued by the College of American Pathologists, published in peer review journals, or published by the Arizona Medical Examiner. Thus it appears that what an individual doctor may consider a routine pathological examination might be considered a violation of § 36–2303 if it is "part of or in any way related to any medical or scientific experimentation." A.R.S. § 36–2303.

The only routine part of a pathological examination is the mounting of the tissue specimen onto the slide. From that point forward, the pathological studies and evaluations of the tissue become subjective. Under § 36–2302, it is unclear if a pathologist who notices something abnormal in a particular fetal tissue specimen would be prohibited from following up on that observation because to do so would be to step outside the confines of conducting a "routine" examination. Thus, any further exploration of the fetal tissue sample could constitute an examination that was part of or related to medical or scientific experimentation.

## IV. Conclusion

In this case the Court finds that § 36–2302 "simply has no core" that unquestionably applies to certain activities. *Margaret S.*, 794 F.2d at 999. The Arizona statute suffers from the same problems of vagueness as the Louisiana law in *Margaret S.* and the Illinois statute in *Lifchez*. The Court finds that the ambiguities in the terms experimentation, investigation, and routine violate the Due Process clause of the Fourteenth Amendment. Additionally, these ambiguities are material to the interpretation of the statute. The uncertainty that is inherent in § 36–2302 derives from its failure to define the key terms experimentation, investigation, and routine. The lack of consensus as to what these words mean, the criminal penalty for violation of this statute, and the explosion of technology makes it impossible for the physicians to know which procedures may be forbidden thus they "steer far wider of the unlawful zone ... than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109, 92 S.Ct. 2294.

■ Defendants allege that these Arizona statutes are not vague because they contain a "scienter" requirement which negates the concern about the lack of a bright line between experimentation and treatment. A "scienter" requirement may mitigate a law's vagueness. *Village of Hoffman Estates*, 455 U.S. at 499, 102 S.Ct. 1186 (the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.) However, a scienter requirement cannot save a statute such as A.R.S. § 36–2302 that has no core of meaning to begin with. *See Colautti v. Franklin*, 439 U.S. at 395, 99 S.Ct. 675 ("The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain." (citations omitted)). That is because a scienter requirement "cannot make definite that which is undefined." *Screws v. United States*, 325 U.S. 91, 105, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (plurality opinion). The scienter requirement in § 36–2302, "knowingly," does not provide adequate notice to the physicians due to the ambiguities in material terms and the ever changing technology surrounding this area of medicine.

Based on the lack of statutory definitions, lack of medical standards, and the ambiguity of material terms coupled with the criminal penalty for a violation of this statute, the Court finds that § 36–2302 is void for vagueness.

There is a longstanding precedent that courts should decide constitutional issues on the narrowest grounds possible. *See Brockett v. Spokane Arcades,* 472 U.S. 491, 501, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). Thus, the Court, having resolved that Plaintiffs' Motion for Summary Judgment should be granted and Defendants' Motion for Summary Judgment denied on the narrow grounds of a violation of the Due Process clause of the Fourteenth Amendment, need not reach Plaintiffs' other five constitutional claims.

Accordingly,

IT IS **ORDERED** that:

1. Defendants' Motion for Summary Judgment [Doc. # 37] is **DENIED;**
2. Plaintiffs' Motion for Summary Judgment [Doc. # 40] is **GRANTED;**
3. A.R.S. §§ 36–2302, 32–1401(25)(x), and 32–1854(45) are unconstitutional and Defendants are permanently enjoined from enforcing them;
4. This action is **DISMISSED** with prejudice.