BERZON, Circuit Judge,
concurring:
J.D.T. was a ten-year-old child when the acts for which he was adjudicated occurred. He was prepubescent and developmentally delayed. The district court acknowledged at sentencing that even then, a year after the offenses occurred, J.D.T. was “closer to seven or eight with his mental status.” The statute under which he was declared a juvenile delinquent, 18 U.S.C. § 2241(c), makes illegal certain acts, considered inherently sexual in nature if committed by a physically mature individual, without regard to sexual motivation or intent, and regardless of whether the defendant used force or threats to accomplish the act.
I concur in the majority opinion with regard to jurisdiction, sufficiency of the evidence, and the evidentiary issue. I also concur in the decision to remand with respect to the delinquency finding, but unlike the majority, I believe there is only one proper outcome to that issue on remand. J.D.T. should not have been treated as a delinquent given his age, the dire possible consequences for his future in light of the recent proliferation of sexual offender registration statutes, and the lack of prosecu-torial guidance provided by § 2241(c) as applied to a child offender himself under twelve years old — the age limit of the victims protected by the statute.
DISCUSSION
I
Under the Federal Juvenile Delinquency Act (FJDA), the district court had several options when determining the disposition of a child found to be a juvenile delinquent. The FJDA provides that the district court “may suspend the findings of juvenile delinquency, place him on probation, or commit him to official detention which may include a term of juvenile delinquent supervision to follow detention,” and may also impose restitution. 18 U.S.C. § 5037(a). “[Although the FJDA grants district courts the discretion to select from among the dispositions authorized under § 5037, this discretion must be exercised in accordance with the rehabilitative function of the FJDA, which requires an assessment of the totality of the unique circumstances and rehabilitative needs of each juvenile.” United States v. Juvenile, 347 F.3d 778, 787 (9th Cir.2003). “It must be clear from the record, if not explicit, that a district court weighed all of the relevant factors and found that the disposition imposed was the least restrictive means to accomplish a young person’s rehabilitation, given the needs of the child and the community.” Id. And the district court “must provide a reasoned basis for why it has rejected less restrictive interventions.” Id. at 788.
J.D.T.’s attorney requested that the finding of juvenile delinquency be suspended. He argued that, if the court did not suspend the finding of delinquency, J.D.T. may be required to register as a sex offender for life, and “to brand [J.D.T.] for the rest of his life as a sex offender ... would be contrary to the purposes of rehabilitation.”
The district court nonetheless left the juvenile delinquency finding in place and sentenced J.D.T. to a five-year term of probation. On one level the sentence was a suitable one, as J.D.T. was left in his home and required to undergo therapeutic treatment, rather than committed to an institutional setting. But the district court did not consider whether to suspend the finding of delinquency entirely. Instead, the court stated, “I haven’t decided wheth *1009 er to make that decision or not. He’s definitely delinquent. I can’t suspend the fact that he’s delinquent. He’s the poster child for being delinquent. We’ll talk about the legal niceties later.” Thereafter, the district court entered judgment, deeming J.D.T. “a juvenile delinquent” and imposing the probation term.
In expressly refusing to decide whether to suspend the finding of delinquency, the district court abused its discretion in two ways. First, the district court failed to consider one of the statutorily enumerated sentencing options for a juvenile delinquent — suspension of the delinquency finding. That option was less restrictive option than the probation term imposed. Thus, the district court did not consider sufficiently whether the sentence it imposed was the least restrictive means of rehabilitating J.D.T., in violation of the FJDA’s mandate.
Second, the district court made clear that it thought that it could not suspend the finding of delinquency because J.D.T. was in fact a juvenile delinquent. But a finding that J.D.T. was a juvenile delinquent was a necessary predicate to suspending such a finding — it did not preclude that suspension. The FJDA states, “If the court finds a juvenile to be a juvenile delinquent, the court shall hold a disposition hearing concerning the appropriate disposition,” and after it holds the disposition hearing, it “may suspend the findings of juvenile delinquency.” 18 U.S.C. § 5037(a) (emphasis added).[1] Thus, it was legal error for the district court to decline to suspend its finding that J.D.T. was a juvenile delinquent on the ground that it lacked the power to do so once it made the finding.[2]
II
The district court’s failure to consider adequately whether to suspend the finding of delinquency is contrary to “the primary purpose of the FJDA ... to rehabilitate children who have committed criminal acts, assisting them to become successful and productive members of their communities.” Juvenile, 347 F.3d at 787. Although asked to do so, the district court did not consider a recent legal development that is directly at odds with this “primary purpose” of the FJDA — -namely, the fact that in many states, J.D.T. may be required to register as a sex offender, even after he has completed his probation term. In some, his photograph and identifying information may be publicly distributed, despite laws that generally keep juvenile records pri *1010 vate.[3] See Nicole Pittman and Quyen Nguyen, A Snapshot of Juvenile Sex Offender Registration and Notification Laws: A Survey of the United States (2011); Human Rights Watch, No Easy Answers: Sex Offender Laws in the US 75-76 (2007).[4] Although I am not suggesting that all juvenile sex offenders’ delinquency findings should be suspended to avoid this consequence (nor am I certain that suspension of the delinquency finding would in all instances avoid the sex offender registration requirements[5]), J.D.T.’s age and lack of recidivism or prior treatment; the strict liability nature of the crime; and the consequent inability to distinguish between the offender and victim all indicate to me that the district court’s failure to consider suspending the delinquency finding was a fundamental error. Indeed, in my view, the suspension should have been not only considered but granted; any other conclusion would have been an abuse of discretion.
Being publicly identified through online registries would have an enormous impact on J.D.T., perhaps for the rest of his life. First, a registration requirement could severely limit J.D.T.’s ability to find employment in the future. Employers are likely reluctant to hire sex offenders even if the nature of the offense has no bearing on the job. And in some states, registered sex offenders are barred from working in jobs where they may come into contact with children even inadvertently, or where they will be within a certain distance of places where children may be, such as public athletic fields or swimming pools. See, e.g., Phoebe Geer, Justice Served? The High Cost of Juvenile Sex Offender Registration, 27 Dev. Mental Health L. 34, 49-50 (2008); Human Rights Watch, supra, at 81-84.
Second, J.D.T. may face difficulty in finding housing in the future. Landlords often refuse to rent to registered sex offenders. Human Rights Watch, supra, at 95-96. Also, many states and municipalities have laws or ordinances that prohibit registered sex offenders from living in areas near where children may be. Id. at 100-04. Such restrictions often “prevent *1011 offenders from living in the areas closest to jobs and public transit, since schools, daycare centers, and parks are often built in the center of main residential areas of cities and towns,” id. at 101, and may restrict registered offenders to very few residential areas, if any, see, e.g., G.H. v. Township of Galloway, 401 N.J.Super. 392, 951 A.2d 221, 236 (N.J.Super.Ct.App.Div.2008) (observing that New Jersey ordinances preventing sex offenders from residing within 2,500 feet of any school, park, playground, public library, or daycare center may result in “total exclusion” or “near-total exclusion”); Fross v. Cnty. of Allegheny, 610 Pa. 421, 20 A.3d 1193, 1199 (2011) (observing that similar restrictions “essentially prohibit[ ] any sex offender from living throughout most of Allegheny County”).
Third, registration requirements and their effects undermine the rehabilitative purpose of the juvenile justice system. As recognized by the Senate when it first established a separate justice system for children in 1938, “[i]t is ... advisable that a juvenile delinquent for whom there is some hope of rehabilitation should not receive the stigma of a criminal record that would attach to him throughout his life.” S.Rep. No. 75-1989, at 1-2 (1938). This “negative labeling” serves to “remove” the child “further from the normal socializing process” and for that reason, when amending the FJDA, the Senate recognized that to achieve the goal of rehabilitation, “[a]t each critical step, we should exhaust the less rejecting, less stigmatizing recourses before taking the next expulsive step.” S. Rep. 93-1011, at 24 (1974), 1974 U.S.C.C.A.N. 5283, 5289. Yet, stigmatizing — “negative labeling” — is inherent in sex offender registration programs (again, absent federal preemption, which has not thus far been invoked here), bringing the two schemes into direct conflict.
These presuppositions of the federal juvenile delinquency legislation are borne out by more recent case law and information, both in general and with regard to sex offenders. “[Registries and notification systems cut youth off from beneficial social networks, creating social stigma and isolation, increasing the risk of suicide, alienating a youth from school and community, and raising barriers to successful participation in society.” . Justice Policy Institute, Youth Who Commit Sex Offenses: Facts and Fiction 2 (collecting sources). As recognized by the Supreme Court, “developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds,” and children “are more capable of change than are adults.” Graham v. Florida, 560 U.S. 48, 68, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010); see also J.D.B. v. N. Carolina, — U.S. -, 131 S.Ct. 2394, 2403 n. 5, 180 L.Ed.2d 310 (2011). Studies show that children who commit sex offenses have relatively low recidivism rates and are more susceptible to treatment and rehabilitation than adult sex offenders. See Human Rights Watch, supra, at 69-70 (collecting sources); Nat’l Center on Sexual Behavior of Youth, Office of Juvenile Justice and Delinquency Prevention, U.S. Dep’t of Justice, What Research Shows About Adolescent Sex Offenders 1 (2003) (same); see also United States v. Juvenile, 347 F.3d 778, 789 n. 9 (9th Cir.2003) (recognizing that “virtually all of the studies show ... that relatively few [juvenile sex offenders] are charged with a subsequent sex crime” and “sexual recidivism of juvenile sexual offenders post-treatment was very rare”) (brackets in original)(internal quotation marks omitted).
Labeling J.D.T. as a delinquent sex offender for the rest of his life is all the more questionable here, as J.D.T.’s parents had voluntarily initiated the involvement of the local child protection agency *1012 and had started counseling for him. See Juvenile, 347 F.3d at 789 n. 9 (studies “have found that successful treatment of juveniles who have sexually offended is facilitated by the participation of the child’s family”); United States v. Juvenile Male, 864 F.2d 641, 644 (9th Cir.1988) (observing that “Congress’ desire to channel juveniles into state and local treatment programs” is “clearly expressed in the legislative history of section 5032”). Indeed, the testimony before the district court illustrated that J.D.T. was responding well to treatment and had not continued to act out sexually with other children.[6]
The need for rehabilitation and treatment, rather than retribution and condemnation, is particularly heightened due to J.D.T.’s unique characteristics. J.D.T., ten years old at the time of the offenses and not yet pubescent, is developmentally delayed, “emotionally immature for his age,” receives special education services, has Attention Deficit Hyperactivity Disorder, and takes numerous daily medications to control his behavior. Further, we have recognized previously that “[a]ge-inappropriate sexual knowledge is a common symptom among sexually abused children,” Juvenile, 347 F.3d at 781 n. 1, which the prosecutor believed J.D.T. likely was.
Whatever may be the case for an older child or for a child adjudicated for a violent crime, creating a situation in which a ten-year-old offender with J.D.T.’s characteristics and background is stigmatized — possibly publicly — for life as a sex offender is fundamentally at odds with the FJDA’s recognition of the rehabilitative prospects for children. The potential consequences of the district court’s delinquency finding will only make it more difficult to rehabilitate J.D.T., especially in conjunction with the tremendous developmental and emotional issues that he faces.
III
A second consideration also influences my conclusion that the only appropriate disposition in this case was suspension of the delinquency finding. As applied to children under twelve years old, 18 U.S.C. § 2241(c) reflects at least one of two defects that underlie the Constitutional vagueness doctrine' — namely, it accords infinite discretion to prosecutors to assign victim and offender status, with no guidance from the statute as to how to do so.
Section 2241(c) criminalizes what is commonly referred to as statutory rape. The section provides in relevant part, “Whoever ... in the special maritime and territorial jurisdiction of the United States ... knowingly engages in a sexual act with another person who has not attained the age of 12 years ... shall be fined under this title and imprisoned for not less than 30 years or for life.”
*1013 The provision makes it an offense for a person to engage in sexual acts with a child under the age of twelve, regardless of whether the offender knew the child’s age. Lack of consent is not an element, because children under the age of twelve are legally incapable of providing consent. Unlike certain other federal criminal statutes, § 2241(c) does not have as an element the use or threatened use of physical force or harm to carry out the sexual act. See, e.g., 18 U.S.C. §§ 2241(a), 2242(1). Nor is sexual motivation or impact an element.[7]
“To satisfy due process, ‘a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement’.” Skilling v. United States, 561 U.S. 358, 402-03, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010) (formatting in original) (quoting Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). “The void-for-vagueness doctrine embraces these requirements.” Id. The Supreme Court has recognized “that the more important aspect of vagueness doctrine ‘is not actual notice, but the other principal element of the doctrine — the requirement that a legislature establish minimal guidelines to govern law enforcement.’” Kolender, 461 U.S. at 358, 103 S.Ct. 1855 (quoting Smith v. Goguen, 415 U.S. 566, 574, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)). “Where the legislature fails to provide such minimal guidelines, a criminal statute may permit ‘a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.’ ” Id. (quoting Smith, 415 U.S. at 575, 94 S.Ct. 1242).
Section 2241(c), as applied to children under the age of twelve who engage in sexual acts with other children under the age of twelve, encourages arbitrary and discriminatory enforcement. On occasion, children engage in mutual sexual play. See, e.g., In re M.D., 38 Ohio St.3d 149, 527 N.E.2d 286 (1988) (case involving a five-year-old putting his penis in the mouth of another five-year-old at the direction of another child while the three were “playing doctor”). When the sexual conduct at issue involves an adult and a child under the age of twelve, only the adult can be the perpetrator and only the child can be the victim. But when two children under twelve years old engage in sexual conduct with one another, the statute provides no guidance as to who is the offender and who is the victim. Instead, under the terms of *1014 the statute, each child is both an offender and a victim.
As the Ohio Supreme Court explained when it invalidated a similar state statute as unconstitutionally vague,
The facts of this case provide an example of the temptation for prosecutors to label one child as the offender and the other child as the victim. Based apparently upon the theory that D.B. forced M.G. to engage in sexual conduct, the state alleged that D.B., but not M.G., had engaged in conduct that constituted statutory rape. However, while the theory of D.B. as the aggressor was consistent with the counts alleging a violation of R.C. 2907.02(A)(2), which proscribes rape by force, this theory is incompatible with the counts alleging a violation of statutory rape because anyone who engages in sexual conduct with a minor under the age of 13 commits statutory rape regardless of whether force was used. Thus, if the facts alleged in the complaint were true, D.B. and M.G. would both be in violation of R.C. 2907.02(A)(1)(b).
In re D.B., 129 Ohio St.3d 104, 950 N.E.2d 528, 533 (2011), cert. denied, — U.S. -, 132 S.Ct. 846, 181 L.Ed.2d 563 (2011). The Ohio courts have applied D.B. to bar prosecution of children even where there is a significant age difference between the alleged perpetrator and victim. See In re D.R., 2012 WL 5842773, at *4-6 (Ohio Ct.App.2012).
Similarly, here, the elements of the offenses with which J.D.T. was charged do not involve the use of force or threats of force. Under the facts proven here, if § 2241(c) can apply to children under the age of twelve, J.D.T. and the other children involved were all in violation of the statute. That one child and not the other was considered to be the aggressor would not matter. That the prosecutors apparently considered J.D.T. the culpable young child does not cure the unfettered discretion problem, as the factors that suggest that J.D.T. was the aggressor are extraneous to the statute. They are matters fully within the prosecutors’ discretion to rely upon or not, as the prosecutors choose.
And prosecutors do not always make their charging decisions in a constrained or wise way. In State ex rel. Z.C., 165 P.3d 1206 (Utah 2007), for example, the state prosecuted both children who engaged in sexual conduct with one another. The children in Z.C. were twelve and thirteen years old, and engaged in consensual sexual intercourse; the statute criminalized such behavior with children under fourteen years old. Id. at 1207-08.
Placing such unconstrained discretion within the hands of prosecutors because the statute itself contains no ascertainable limits is precisely the problem the prosecu-torial discretion strain of the vagueness doctrine is designed to cure. By entrusting the development of minimum standards for enforcement to the case-by-case judgment of prosecutors, legislatures “abdicate their responsibilities for setting the standards of the criminal law.” See Smith, 415 U.S. at 575, 94 S.Ct. 1242.
The majority insists that the statute is not unconstitutionally vague, because it applies to “whoever” engages in the proscribed conduct, and the forbidden acts are spelled out quite clearly. As to the notice aspect of the vagueness doctrine, I might agree that the statute “define[s] the criminal offense ... with sufficient definiteness that ordinary people can understand what conduct is prohibited.” Skilling, 561 U.S. at 402, 130 S.Ct. 2896.
But this “ordinary people” standard takes on an air of unreality when applied to a ten-year-old with a mental and emotional capacity of a seven- or eight-year- *1015 old. More importantly, the breadth of prosecutorial discretion — even if one assumes that it was intended by Congress[8] —must inform the exercise of the district court’s authority to suspend the juvenile delinquency finding. Where, as here, the actual possible consequences for a very young child — lifetime designation as a registered sex offender in some states — is at odds with the presuppositions of the FJDA, the lack of guidance the statute otherwise provides calls for the most meticulous exercise of judicial discretion when imposing a disposition. It was thus particularly important for the district court to understand the disposition options and to consider carefully which alternative was the least restrictive means to rehabilitate the young child before it.
IV
In my view, given the specific possible consequences for J.D.T., his age and circumstances, and the lack of prosecutorial guidance provided by the offense statute regarding children under twelve, any result other than suspension of the delinquency finding would be an abuse of discretion.
It must be remembered that, even if we were to hold that § 2241(c) is unconstitutional as applied to a child under the age of twelve who engages in sexual acts with other children under the age of twelve, a child in that age group still could be found guilty of rape if other additional elements were found that differentiated the perpetrator from the victim — for example, if the offender used force or threats, 18 U.S.C. §§ 2241(a), 2242(1); if the offender rendered another person unconscious or drugged the person, 18 U.S.C. § 2241(b); or if the other person was physically incapable of refusing to participate in the act, 18 U.S.C. § 2242(2)(B). But J.D.T. was not charged with violations of any of these provisions. And to apply a statutory rape provision to prosecute a developmentally delayed ten-year-old child is in extreme tension with the aims of the FJDA, for all of the reasons I have surveyed.
In sum, the district court should have suspended the delinquency finding. As the district court applied the wrong legal rule in failing to consider J.D.T.’s suspension request, I concur in the majority’s decision to remand the case with an instruction that the district court make a determination on that issue.

. A Senate Report discussing a proposed amendment to § 5037 confirms this sequence, explaining that ”[a]fter a finding of juvenile delinquency, the court is authorized ..., after a hearing concerning the appropriate disposition, to suspend the finding of juvenile delinquency.” S. Comm, on the Judiciary, 94th Cong., 1st Sess., Rep. on the Criminal Justice Reform Act of 1975 1020 (Comm. Print 1975) (emphasis added).

. Shortly after sentencing, J.D.T. moved to correct his sentence under Federal Rule of Criminal Procedure 35(a), again asking the district court to set aside the delinquency finding. Several weeks later, the district court denied the motion, explaining, “The Court, after doing some basic research of the statute, the term ‘suspend’ is not defined or explained and due to the gravity of the nature of these charges, the Court declines to grant the Motion to Correct Sentence.” By the time that the district court acted on the motion, it lacked jurisdiction to modify the sentence under Rule 35(a), so its comments at that point are not directly pertinent to whether it committed legal error in treating J.D.T. as a delinquent. See United States v. Barragan-Mendoza, 174 F.3d 1024, 1027-30 (9th Cir.1999). But the district court's comment on denying the motion to correct the sentence does confirm its substantive confusion as to the reach of its authority to suspend the finding of juvenile delinquency.

. I note that, although neither party has so argued in this case, insofar as state laws may require public disclosure of the name or picture of a child who was adjudicated as a delinquent in federal court for a sexual offense committed while under the age of fourteen, such laws may be preempted by the FJDA’s confidentiality provision. See 18 U.S.C. § 5038; United States v. Juvenile Male, 670 F.3d 999, 1007-08 (9th Cir.2012) (concluding that § 5038 conflicted with the federal sex offender registration and disclosure requirements created by the Sex Offender Registration and Notification Act (SORNA) for juvenile delinquents who were fourteen years or older at the time of the offense, and that the later enacted SORNA controlled for these older juveniles, but that "[f]or all other juvenile delinquents, the FJDA's confidentiality provisions remain in force").

. Among other places, if J.D.T. were to move to Montana, he would be subject to lifelong registration as a sexual offender; state law also makes the name and address of registered sexual offenders publicly available. See Mont.Code Ann. §§ 45-5-502(3); 46-23-502(9)(b),(10); 46-23-506(1); 46-23-508(l)(a); see also United States v. Juvenile Male, 360 Mont. 317, 255 P.3d 110, 112-15 (2011) (holding that a juvenile adjudicated as delinquent in federal court for violation of § 2241(c) had a duty under state law to register as a sexual offender when present in Montana). Similarly, if he went to school in Illinois or Iowa, he would be required to register. See 730 Ill. Comp. Stat. 150/3(a-5); Iowa Code §§ 692A.102(l)(c)(34), 103(l)(e), (3).

.For example, Colorado requires registration of "any person who receives a disposition or is adjudicated a juvenile delinquent based on the commission of any act that may constitute unlawful sexual behavior or who receives a deferred adjudication based on commission of” such an act. Colo .Rev. Stat. § 16-22-103(4) (emphasis added).

. To a degree, the statutory scheme under which J.D.T. was prosecuted, and the district judge's disposition, recognize these concerns. Because J.D.T. was prosecuted under the FJDA, the sentencing provisions of § 2241(c) were inapplicable to the proceedings. An adult who is convicted of violation of § 2241(c) faces imprisonment "for not less than 30 years or for life." 18 U.S.C. § 2241(c). In contrast, under the FJDA, J.D.T. could not be placed in official detention past his twenty-first birthday. 18 U.S.C. § 5037(c). The reason that differences such as this one exist is that "the FJDA was intended to provide for the care and treatment of juvenile delinquents, in recognition of significant differences between juvenile delinquents and adult offenders.” Juvenile Male, 670 F.3d at 1004 (internal quotation marks and citations omitted). The district court’s decision to sentence J.D.T. to probation rather than placing him in a detention facility was based on rehabilitative concerns and a recognition that a custodial sentence may "make things worse.” But the district court still was required to consider whether an alternative less restrictive than the delinquency finding was appropriate.

. 18 U.S.C. § 2246(2) defines sexual act as:
(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however, slight;
(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.
J.D.T. was charged and adjudicated as delinquent for committing a sexual act as defined in subsections (A) and (B), and not subsections (C) or (D). Therefore, the government did not have to prove that he acted "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.” 18 U.S.C. §§ 2246(2)(C), (D).
In fact, J.D.T. originally was charged with one count that did require such a showing. The government voluntarily dismissed that charge at the conclusion of its presentation of evidence because, as the majority observes, the evidence "was apparently insufficient to prove” that count. Maj. Op. at 990.

. Although there are contrary indications as well, some aspects of the legislative history for § 2241(c) suggest that Congress may have intended to leave charging decisions in cases involving two young children to prosecutorial discretion. During a hearing on an earlier version of the Sexual Abuse Act of 1986, which added § 2241(c), the Department of Justice suggested removal of the age difference limitation that "would make it an offense for a person to engage in a sexual act with an individual less than twelve years old only if the actor were at least four years older than the victim,” a requirement that was ultimately eliminated when § 2241(c) was enacted. Federal Rape Law Reform: Hearing Before the Subcomm. on Criminal Justice of the H. Comm, on the Judiciary, 98th Cong., 2nd Sess. 96 (1984) (statement of Victoria Toens-ing, Dep. Ass't Atty. Gen., Dep't of Justice). The Department of Justice opined that "[t]he effect of such legislation might be to send an unfortunate signal that the Congress condones sexual activity by and with pre-teenage children, so long as both participants are of similar tender years.” Id. It urged that instead Congress should "criminalize sexual activity by anyone with a person under twelve years old, and leave to prosecutorial and judicial discretion the occasions when such activity occurs between two persons of very young age.” Id. at 96-97. It reassured, “[w]e are not aware of any instance in which such discretion is alleged to have been abused.” Id. at 97.